[Cite as *Bank of New York Mellon Trust Co, N.A. v. Loudermilk*, 2013-Ohio-2296.]

COURT OF APPEALS
FAIRFIELD COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| THE BANK OF NEW YORK MELLON TRUST CO, N.A. | : | JUDGES: |
|  | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. William B. Hoffman, J. |
| Plaintiff-Appellee | : | Hon. Sheila G. Farmer, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2012-CA-30 |
| CHARLES D. LOUDERMILK, DECEASED, ET AL. | : |  |
|  | : | O P I N I O N |
| Defendants-Appellants | : |  |

CHARACTER OF PROCEEDING:     Civil appeal from the Fairfield County Court
                             of Common Pleas, Case No. 2010CV00106


JUDGMENT:                    Affirmed


DATE OF JUDGMENT ENTRY:      June 3, 2013


APPEARANCES:

For Plaintiff-Appellee                For Defendants-Appellants

AMELIA BOWER                          THOMAS CORBIN
300 East Broad Street, Suite 590      842 North Columbus Street
Columbus, Ohio  43251                 Lancaster, Ohio  43130

*Gwin, P.J.*

{¶1} Appellants appeal the May 15, 2012 judgment entry and decree of foreclosure of the Fairfield County Common Pleas Court.

*Facts & Procedural History*

{¶2} Charles Loudermilk ("Loudermilk") owned the real property known as 4105 Lancaster-Chillicothe Road S.W., Lancaster, Ohio since 1968. When he purchased the property, it consisted of 184 total acres. In 1999, Loudermilk sold 80.5 acres to third parties and in 2001 he conveyed another 14.3 acres to a third party. In October of 2001, Loudermilk mortgaged the remaining 89 acres to Washtenaw Mortgage. He refinanced one year later with a mortgage to CIT Consumer Finance covering the 89 acres and, in that refinance, he paid off the 2001 mortgage. In December of 2004, Loudermilk had a survey performed to split off ten acres of the 89 acre parcel. The survey split out a ten acre parcel which included Loudermilk's three bedroom house. In January of 2005, Loudermilk refinanced with First Magnus Financial, securing the ten acre parcel surveyed in December of 2004. Funds from the First Magnus mortgage went to pay the prior mortgage, taxes, credit card bills, and the costs of surveying the property. The description of the ten acre tract was prepared by a surveyor hired by Vantage Land Title, the title agency closing both the 2005 and 2006 transactions.

{¶3} In May of 2006, Loudermilk again refinanced. On May 25, 2006, he executed a note in favor of LoanCity in the amount of $171,000. Loudermilk secured the note with a mortgage to Mortgage Electronic Registration Systems ("MERS") as nominee for LoanCity. LoanCity subsequently endorsed the note in blank and transferred it to Residential Funding Corporation. Residential Funding Corporation then

endorsed the note in blank and transferred it to JPMorgan Chase Bank, N.A. as Trustee for RAMP 2006RS5. Attached to the note is an allonge endorsing the note from JPMorgan Chase Bank, N.A. as Trustee for RAMP 2006RS5 to appellee The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2006RS5. At the time of the refinance, the lender appraised the ten acre parcel. Loudermilk used the funds from the refinancing to pay off the 2005 mortgage and unsecured debt. The mortgage contained no legal description, but included the 4105 Lancaster-Chillicothe Road S.W., Lancaster, Ohio street address and the auditor's permanent parcel number. The mortgage was not recorded. At the closing, Loudermilk executed a quit-claim deed to split the ten acre portion that included the house from the remainder of 89 acre parcel. While the lot split was approved by the Fairfield County Engineer, the split was not concluded because the deed process was not finished.

{¶4} Subsequent to the execution of the 2006 mortgage, Loudermilk conveyed 22 acres to a third party, leaving a balance of approximately 67 acres. Loudermilk died intestate on December 22, 2008. On February 13, 2009, Dale Loudermilk was appointed administrator of Charles Loudermilk's estate. Dale Loudermilk previously lived in a mobile home on the property that was not located on the ten acres involved in the land split or the 2005 and 2006 mortgage. In 2009 after his father's death, Dale Loudermilk moved into the house located on the ten acres mortgaged in 2005. Dale Loudermilk testified he has not paid the mortgage, real estate taxes, rent, or insurance on the property since moving into the house in 2009.

{¶5} Loudermilk defaulted under the terms of the note and mortgage and appellee accelerated the debt. On January 27, 2010, appellee filed a Complaint for Foreclosure against Loudermilk and appellants Unknown Spouse of Charles H. Loudermilk, Thomas Corbin, Dale Loudermilk as heir of the estate of Charles Loudermilk, Pamela Rupp as heir of the estate of Charles Loudermilk, and Dale Loudermilk as Administrator of the estate of Charles Loudermilk. Copies of the note, allonge to note, and mortgage were attached as exhibits to the complaint.

{¶6} Appellee filed a motion for summary judgment seeking foreclosure of the ten-acre parcel based on default in payment. Appellants filed a response and their own motion for summary judgment. On May 15, 2012, the trial court entered an order granting appellee's motion for summary judgment and ordering appellee to submit a foreclosure decree. Appellant filed an appeal of the trial court's May 15, 2012 judgment entry granting summary judgment to appellee and raises the following assignments of error on appeal:

{¶7} "I. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF/APPELLEE, WHEN GENUINE ISSUES OF MATERIAL FACT EXISTED AND THE MOVANT IS NOT ENTITLED TO JUDGMENT AS A MATTER OF LAW.

{¶8} "II. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF/APPELLEE WHEN ITS CLAIM WAS BASED ENTIRELY UPON EQUITABLE PRINCIPLES, AND THE EQUITIES DO NOT FAVOR THE CLAIMANT.

{¶9} "III. THE TRIAL COURT ERRED IN FINDING THAT THE PLAINTIFF/APPELLEE WAS THE REAL PARTY IN INTEREST.

**{¶10}** "IV. THE TRIAL COURT ERRED IN FAILING TO APPLY THE DOCTRINE OF LACHES.

**{¶11}** "V. THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT TO PLAINTIFF/APPELLEE WHEN ITS CLAIM WAS BARRED BY ORC 2105.06.

**{¶12}** "VI. THE TRIAL COURT ERRED BY DENYING TO DEFENDANT/APPELLANT LEAVE TO AMEND ITS PLEADINGS."

*Summary Judgment*

**{¶13}** Civ. R. 56 states in pertinent part:

**{¶14}** "Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law.  No evidence or stipulation may be considered except as stated in this rule.  A summary judgment shall not be rendered unless it appears from the evidence or stipulation, and only from the evidence or stipulation, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence or stipulation construed mostly strongly in the party's favor.  A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

**{¶15}** A trial court should not enter a summary judgment if it appears a material fact is genuinely disputed, nor if, construing the allegations most favorably towards the non-moving party, reasonable minds could draw different conclusions from the

undisputed facts.  *Hounshell v. Am. States Ins. Co.*, 67 Ohio St.2d 427, 424 N.E.2d 311 (1981).  The court may not resolve any ambiguities in the evidence presented.  *Inland Refuse Transfer Co. v. Browning-Ferris Inds. of Ohio, Inc.*, 15 Ohio St.3d 321, 474 N.E.2d 271 (1984).  A fact is material if it affects the outcome of the case under the applicable substantive law.  *Russell v. Interim Personnel, Inc.*, 135 Ohio App.3d 301, 733 N.E.2d 1186 (6th Dist. 1999).

{¶16} When reviewing a trial court's decision to grant summary judgment, an appellate court applies the same standard used by the trial court.  *Smiddy v. The Wedding Party, Inc.*, 30 Ohio St.3d 35, 506 N.E.2d 212 (1987).  This means we review the matter de novo.  *Doe v. Shaffer*, 90 Ohio St.3d 388, 2000-Ohio-186, 738 N.E.2d 1243.

{¶17} The party moving for summary judgment bears the initial burden of informing the trial court of the basis of the motion and identifying the portions of the record which demonstrate the absence of a genuine issue of fact on a material element of the non-moving party's claim.  *Drescher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996).  Once the moving party meets its initial burden, the burden shifts to the non-moving party to set forth specific facts demonstrating a genuine issue of material fact does exist.  *Id.*  The non-moving party may not rest upon the allegations and denials in the pleadings, but instead must submit some evidentiary materials showing a genuine dispute over material facts.  *Henkle v. Henkle*, 75 Ohio App.3d 732, 600 N.E.2d 791 (12th Dist. 1991).

*I.       Genuine Issues of Material Facts*

**{¶18}** Appellants first argue the trial court erred in granting summary judgment because there are genuine issues of material fact concerning whether: a deed was presented to Dale Loudermilk in order to complete the lot split of the property; the mortgage instrument was properly notarized; the foreclosure could be effectuated with no legal description attached to the mortgage; Loudermilk intended to mortgage the ten acres referenced in the prior mortgage; and Loudermilk had the opportunity to review the closing documents.

**{¶19}** Appellants question whether the mortgage was properly notarized and whether Loudermilk had the opportunity to review and understand the closing documents. Appellants present an affidavit from Dale Loudermilk stating he did not find a copy of the mortgage in his father's house and the property was to pass to him upon his father's death. However, Dale Loudermilk's lack of knowledge about the mortgage and his father's assertions about the property do not create material issues of fact. Dale Loudermilk testified he never discussed finances with his father and never discussed or had any knowledge of any of the mortgages on the property dating back to 2001. Dale Loudermilk further stated his father did not consult him prior to selling off pieces of the land and did not know how much any of the land was sold for. Loudermilk sold and mortgaged his property frequently from 1999 to 2006. Though Dale Loudermilk states a copy of the mortgage was not found in his father's house, Dale did find in his father's checkbook a record of his father's monthly payment of the mortgage. Loudermilk was able to fully benefit from the 2006 refinance. The affidavit from Ginger Krznarich, Vice President of Operations for Vantage Land Title, demonstrates Loudermilk was able to

pay off a prior mortgage, pay down unsecured debts, and retain $381.35 in proceeds from the funds of the 2006 refinance. The affidavit of Ms. Krznarich provides that, at the closing, Loudermilk executed and delivered a $171,000 Note to LoanCity and $171,000 mortgage to LoanCity/MERS. There is no evidence that Loudermilk did not understand the closing documents or the mortgage was not properly notarized. Loudermilk had been paying on the mortgage monthly from 2006 until his death in 2008.

{¶20} Appellants further argue the deeds involved the lot split were not presented to Dale Loudermilk. An affidavit signed by Dale Loudermilk states he was never asked to sign the deeds. While the evidence suggests there was a plan in place for transfers to strawmen to conclude the ten acre split, both parties agree the lot split was not completed and the deeds questioned by Dale Loudermilk were never filed. Accordingly, the existence of these uncompleted and unsigned deeds does not create a genuine issue of material fact with regards to the foreclosure case.

{¶21} Appellants argue there are genuine issues of material fact regarding the property to be mortgaged because the mortgage lacked a legal description. We disagree. "Ohio mortgage law does not set forth a precise legal description that must be included on a mortgage." *Fifth Third Mtge. Co. v. Brown*, 970 N.E.2d 1183, 2012-Ohio-2205 (8th Dist.). R.C. 5302.12 provides a properly executed mortgage is valid when "in substance" it follows the form: a description of land or interest in land and encumbrances, reservations, and exceptions, if any. A description of the property does not require a formal "metes and bounds" description. *Brown*, 970 N.E.2d at 1183. A mortgage providing a correct parcel number and street address has been deemed a sufficient legal description of property subject to a mortgage. *ABN AMRO Mtge. Group,*

*Inc. v. Jackson*, 159 Ohio App.3d 551, 558-59, 2005-Ohio-297, 824 N.E.2d 600 (2d Dist); *In re Bunn*, 578 F.3d 487, 490 (6th Cir. 2009) (determining under Ohio law, a mortgage that only provided a street address of residential property and not a legal description gave sufficient notice to third parties of the existence of the mortgage if it is clear from the chain of title what the borrower was mortgaging).

**{¶22}** Here, the correct street mailing address and auditor's permanent parcel number were both included in the 2006 mortgage. Further, the 2005 mortgage contained the ten acre description that should have been attached to the 2006 refinance. It is thus clear from the chain of title that Loudermilk was mortgaging the ten acre parcel covered by the prior mortgage with his 2006 refinance.

**{¶23}** Appellants finally argue genuine issues of material fact exist because there are questions as to whether Loudermilk intended to mortgage the ten acres referenced by the prior mortgage. Appellants posit perhaps Loudermilk intended to mortgage a different ten acres of the eighty-nine acre property.

**{¶24}** In this case, the testimony and documentary evidence demonstrates Loudermilk intended to mortgage the ten acres referenced by the prior mortgage and covering the house. The surveyor prepared a survey and legal description for the ten acres and Ginger Krznarich testified Vantage Land Title sent a letter on April 27, 2006 to the Fairfield County Audior / Engineer with the survey and legal description attached stating the "owner of the property wants to refinance property just using the 10.0 acres." Krznarich testified the title commitment given to Loudermilk at the closing was for the ten acres covered by the previous mortgage and the prior incorrect title commitment was changed to reflect the land to be mortgaged. Exhibit 5 of an affidavit by Nancy

Dilworth, duly authorized signer of GMAC Mortgage, LLC, the loan servicing agent for the Bank of New York Mellon Trust Company, states the commitment for title insurance would have been presented to Loudermilk at the closing and the title commitment reflected the ten acre parcel covered by the previous mortgage. Further, the 2005 mortgage contained the legal description of the ten acres at issue. Appellee's appraisal conducted at the time of the 2006 refinance, which appellants do not challenge, was based upon the value of the ten acres containing the house, as indicated by the Dilworth affidavit.

**{¶25}** The evidence demonstrates that going back to 2004, Loudermilk sought to segregate the ten acres containing his house to mortgage, but not the remainder of his land. The ten acres referenced in the prior mortgage are the only ten acres contained in the documents and testimony. In Dilworth's affidavit, she states the only ten acre tract referenced in any of the records relating to Loudermilk's mortgage is the ten acres with the home. Dale Loudermilk testified he did not know what his father did financially and was unaware of any of the various mortgages his father had placed on the property. There is no evidence Loudermilk had another ten acre parcel in mind when he refinanced the mortgage in 2006. Accordingly, we find no genuine issue of material fact exists as to the ten acres being mortgaged.

**{¶26}** Appellants' first assignment of error is overruled.

## II.     Equity

**{¶27}** Appellants argue appellee is not entitled to a judgment based on equitable principles. Appellants first argue the title agency hired by appellant to complete the title work for the 2006 mortgage was reckless in failing to include a legal description on the

mortgage. As discussed more fully above, the correct street mailing address and auditor's permanent parcel number are included on the mortgage and it is clear from the chain of title of the property the ten acres to be mortgaged. The failure to include the legal description under the facts in this case is thus not a failure to act in good faith.

{¶28} Appellants further argue they have a defense to judgment based upon appellee's failure to record its mortgage. R.C. 5301.23 provides, "All properly executed mortgages shall be recorded in the office of the county recorder of the county in which the mortgaged premises are situated and shall take effect at the time they are delivered to the recorder for record." R.C. 5301.23(A).

{¶29} In Ohio, the "failure or success of recording an instrument has no effect on its validity as between the parties to that instrument." *Bank One, N.A. v. Dillon*, 9th Dist. No. 04CA008571, 2005-Ohio-1950, ¶ 9. "The purpose of the recording statutes is to put other lien holders on notice and to prioritize the liens." *GMAC Mtge. Corp. v. McElroy*, 5th Dist. No. 2004-CA-00380, 2005-Ohio-2837, ¶ 16 (internal citation omitted).

{¶30} In this case, the lack of recording does not provide a defense for appellants and the failure to record is not a failure to act in good faith. The recording statutes protect purchasers for value, not parties to a transaction. *The Wayne Bldg. and Loan Co. of Wooster v. Yarborough*, 11 Ohio St.2d 195, 213 (1967). Here, appellants are not bona fide purchasers for value, but are heirs of an estate.

{¶31} Appellants also argue appellee is not entitled to be subrogated to the 2005 prior mortgage that was paid off with the proceeds of the 2006 refinance because of appellee's negligence in not recording the mortgage and failing to include a legal description. In their complaint, appellee alternatively pled they were entitled to an

equitable lien for the amount of the mortgage if the mortgage was facially invalid and argued equitable subrogation only applied to the extent necessary to show Loudermilk could not receive the benefit of having his debts paid without having a mortgage attach to the ten acre parcel.

{¶32} In this case, we found the correct street mailing address and auditor's permanent parcel number are included on the mortgage and it is clear from the chain of title of the property the ten acres to be mortgaged. Further, that appellants are not bona fide purchasers for value and there are no competing lenders for first lien position. Thus, the doctrine of equitable subrogation need not be applied in this case.

{¶33} Appellants finally argue appellees are not entitled to the equitable remedy of reformation of the mortgage. Reformation is "available where it is shown that a written instrument does not express the true agreement entered into between the contracting parties by reason of a mutual mistake. *Wagner v. Nat'l. Fire Ins. Co.*, 132 Ohio St. 405, 412, 8 N.E.2d 144 (1937). In such a case, the equitable remedy of reformation is available in order to make the writing conform to the real intention of the parties. *Id.* We find reformation is not necessary in this case based upon our findings regarding the legal description, recording, and the lack of a bona fide purchaser.

{¶34} Appellants' second assignment of error is overruled.

### III. Real Party in Interest

{¶35} Appellants argue the trial court erred in finding appellee was the real party in interest.

{¶36} Civil Rule 17(A) provides that "every action shall be prosecuted in the name of the real party in interest." A real party in interest "has been defined as ' * * *

one who has real interest in the subject matter of the litigation, and not merely an interest in the action itself, i.e., one who is directly benefited or injured by the outcome of the case.' "(Citations omitted.) *Shealy v. Campbell,* 20 Ohio St.3d 23, 24, 485 N.E.2d 701 (1985). "The purpose behind the real party in interest rule is " * * * to enable the defendant to avail himself of evidence and defenses that the defendant has against the real party in interest, and to assure him finality of the judgment, and that he will be protected against another suit brought by the real party at interest on the same matter." *Id.* at 24–25, 485 N.E.2d 701 quoting *In re Highland Holiday Subdivision,* 27 Ohio App.2d 237, 240, 273 N.E.2d 903 (4th Dist.1971).

**{¶37}** The current holder of the note and mortgage is the real party in interest in foreclosure actions. *U.S. Bank Natl. Assoc. v. Marcino,* 181 Ohio App.3d 328, 908 N.E.2d 1032, 2009–Ohio–1178 (7th Dist.), ¶ 32 citing *Chase Manhattan Mtge. Corp. v. Smith,* 1st Dist. No. C061069, 2007–Ohio–5874, ¶ 18. R.C. 1303.31 provides:

**{¶38}** (A) "Person entitled to enforce" an instrument means any of the following persons:

(1) The holder of the instrument;

(2) A nonholder in possession of the instrument who has the rights of a holder;

(3) A person not in possession of the instrument who is entitled to enforce the instrument pursuant to Section 1303.38 or division (D) of section 1303.58 of the Revised Code.

(B) A person may be a "person entitled to enforce" the instrument even though the person is not the owner of the instrument or is in wrongful possession of the instrument.

**{¶39}** To properly support a motion for summary judgment in a foreclosure action, a plaintiff must show:

"(1) the movant is the holder of the note and mortgage, or is a party entitled to enforce the instrument;

(2) if the movant is not the original mortgagee, the chain of assignments and transfers;

(3) all conditions precedent have been met;

(4) the mortgage is in default; and

(5) the amount of principal and interest due."

*Wachovia Bank of Delaware, N.A. v. Jackson*, 5th Dist. No. 2010-CA-00291, 2011-Ohio-3202.

**{¶40}** Appellants first argue the note shows no assignments on its face and no assignments are attached. However, the affidavit of Nancy Dilworth, attached to appellee's motion for summary judgment, states otherwise. Dilworth states she has "personal knowledge of the facts contained" in her affidavit. She states "Attached hereto as Exhibit 1 is a true and accurate copy of a promissory note with indorsements and an allonge to note, executed and delivered by Borrower." Further, "as evidenced by Exhibit 1, the interest in the Note transferred from Loan City to Residential Funding Corporaiton in May, 2006. Residential Funding Corporation then transferred the interest in the Note to JPMorgan Chase Bank, as Trustee, who then transferred the interest in

the Note to Plaintiff." Finally, Dilworth states appellee "maintains possession of the original Note and has maintained possession at all times material to this action." While Attorney Corbin submitted an affidavit challenging Ms. Dilworth's affidavit, he did not conduct a deposition of Ms. Dilworth or point to any specific evidence appellants introduced to contradict any of the information contained in her affidavit.

**{¶41}** The Note, attached as an exhibit to the complaint, appellee's motion for summary judgment, and the Dilworth affidavit, demonstrates that on May 25, 2006, Loudermilk executed a note in favor of LoanCity in the amount of $171,000. LoanCity subsequently endorsed the note in blank and transferred it to Residential Funding Corporation. Residential Funding Corporation then endorsed the note in blank and transferred it to JPMorgan Chase Bank, N.A. as Trustee for RAMP 2006RS5. R.C. 1303.25(B) provides "when an instrument is indorsed in blank, the instrument becomes payable to bearer and may be negotiated by transfer of possession alone until specially indorsed." Attached to the note is an allonge endorsing the note from JPMorgan Chase Bank, N.A. as Trustee for RAMP 2006RS5 to appellee The Bank of New York Mellon Trust Company, National Association fka The Bank of New York Trust Company, N.A. as successor to JPMorgan Chase Bank N.A. as Trustee for RAMP 2006RS5. Accordingly, we find appellee is the holder of the note and appellee has shown the chain of assignments and transfers of the note.

**{¶42}** Appellants argue there is doubt as to whether appellee was in possession of the mortgage when the suit was filed and that appellee has not shown the assignment of the mortgage. Ms. Krznarich testified she thinks the original mortgage document is currently with the title company underwriter or counsel for the title agency

or appellee. However, she testified she sent a certified copy of the executed mortgage to LoanCity in 2006 and a certified copy of the executed mortgage is attached to the complaint. In appellee's motion for summary judgment, counsel for appellee indicates he has the original, executed 2006 mortgage in his possession. Further, the affidavits of Ms. Dilworth and Ms. Krznarich state the mortgage was delivered. However, as appellants correctly argue, there is no valid assignment of the mortgage contained in the documents provided by appellee. The assignment provided by appellee was completed in February of 2012, after appellee filed their foreclosure complaint.

{¶43} We find this case is analogous to *Central Mtge Co. v. Webster*, 5th Dist. No. 2011CA00242, 2012-Ohio-4478, in which Central Mortgage was the current holder of the note, but could not establish it was the holder of the mortgage through the assignment of mortgage. However, because the mortgage follows the note it secures, we found Central Mortgage to be a real party in interest. *Id.* As noted in the *Central Mtge. Co.* case, *Kuck v. Sommers*, 59 Ohio Law Abs. 400, 100 N.E.2d 68, 75 (3rd Dist. 1950) holds: "[w]here a note secured by a mortgage is transferred so as to vest the legal title to the note in the transferee, such transfer operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered." This Court has consistently relied on *Kuck v. Sommers* to find the holder of the note is the real party in interest entitled to pursue its rights under the note and mortgage. *See Central Mtge. Co., LaSalle Bank Nat'l. Assn. v. Street*, 5th Dist. No. 08CA60, 2009-Ohio-1855, *Bank of New York v. Dobbs*, 5th Dist. No. 2009-CA-000002, 2009-Ohio-4742, *Duetsche Bank Nat'l. Trust Co. v. Hansen*, 5th Dist. No. 2010 CA 00001, 2011-Ohio-1223, *2010-1 CRE Ventures, LLC v. Costanzo*, 5th Dist. No. 11 CAE 01 003,

2011-Ohio-3530. Other appellate courts and the Sixth District Court of Appeals have utilized *Kuck v. Sommers* to find the holder of the note, in the absence of evidence of the assignment of mortgage, is the real party in interest. *U.S. Bank Nat'l. Assn. v. Marcino*, 181 Ohio App.3d 328, 2009-Ohio-1178, 908 N.E.2d 1032 (7th Dist.) (stating Ohio courts have "held that whenever a promissory note is secured by a mortgage, the note constitutes the evidence of the debt and the mortgage is a mere incident to the obligation" and negotiation of a note operates as an equitable assignment of the mortgage, even though the mortgage is not assigned or delivered, and finding the Uniform Commercial Code, as adopted in Ohio, supports the conclusion that the owner of a promissory note should be recognized as the owner of the related mortgage); *U.S. Bank v. Coffey*, 6th Dist. No. E-11-026, 2012-Ohio-721 (alleged assignee of the mortgage which could not provide evidence of the assignment of mortgage but could demonstrate possession of the promissory note was the real party in interest).

{¶44} Ms. Dilworth's affidavit establishes the conditions precedents have been met, the mortgage is in default, and states the amount of the principal and interest due.

{¶45} Pursuant to the precedent of this court, we conclude there is sufficient evidence in the record to establish appellee is the real party in interest and appellants' third assignment of error is overruled.

*IV.      Laches*

{¶46} Appellants argue the trial court erred in failing to apply the doctrine of laches, stating Loudermilk's estate is prejudiced by the fact appellee did not sooner address the issues before the court. We disagree.

**{¶47}** Laches has been defined by the Ohio Supreme Court as "an omission to assert a right for an unreasonable and unexplained length of time, under circumstances prejudicial to the adverse party." *Connin v. Bailey*, 15 Ohio St.3d 34, 35, 472 N.E.2d 328 (1984), quoting *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959). A delay in asserting a right does not of itself constitute laches. *Id.* Laches is "predominantly a question of fact to be resolved according to the circumstances of each individual case." *Bitonte v. Tiffin Sav. Bank*, 65 Ohio App.3d 734, 739, 585 N.E.2d 460 (3rd Dist. 1989).

**{¶48}** Based on the procedural history of this case, the trial court did not err in failing to apply the doctrine of laches. Laches involves two elements: (1) "an omission to assert a right for an unreasonable and unexplained length of time," (2) "under the circumstances prejudicial to the adverse party." *Connin*, 15 Ohio St.3d at 35-36. Under the second element "it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting his claim." *Id.* First, appellants did not prove there was an unreasonable delay on appellee's part. The mortgage did not default until December 1, 2008 and the foreclosure was filed on January 27, 2010. Further, even if the delay was unreasonable, there is no evidence appellants were materially prejudiced by the delay. The evidence demonstrates appellant Dale Loudermilk actually benefited from the delay. Dale Loudermilk testified since his father's death, he and his family have been living in the house for free, not paying the mortgage, real estate taxes, rent, or insurance. Accordingly, appellants' fourth assignment of error is overruled.

*V. Probate Statutes*

**{¶49}** Appellants argue the trial court erred in granting summary judgment because appellee's claim was barred by R.C. 2105.06. Appellants later state in their reply brief that R.C. 2117.06 and R.C. 2117.10 are the correct statutes that bar appellee's claim. Appellants argue these statutes apply to bar appellee's claim because a mortgage did not exist when Charles Loudermilk died and appellee's lone remedy was to file a claim with his estate. Further, that because appellee did not record the mortgage prior to Charles Loudermilk's death, appellee cannot take advantage of R.C. 2117.10's exception. We disagree.

**{¶50}** R.C. 2117.06 provides that all creditors having a claim against an estate shall present their claims within six months after the death of decedent or else the claim is barred. R.C. 2117.10 states the "failure of the holder of a valid lien upon any of the assets of an estate to present the lienholder's claim upon the indebtedness secured by the lien . . . shall not affect the lien if the same is evidenced by a document admitted to public record . . ."

**{¶51}** R.C. 5301.01(A) states that a "mortgage . . . shall be signed by the grantor, mortgagor . . . The signing shall be acknowledged by the grantor, mortgagor. . . before a . . . notary public . . . who shall certify the acknowledgment and subscribe the official's name to the certificate of the acknowledgment." "The validity of the mortgage is not affected by whether or not the mortgage is recorded, and foreclosure is a remedy independent of those provided for in the probate court." *Weaver v. Bank of New York Mellon*, 10th Dist. No. 11AP-1065, 2012-Ohio-4373; *Beneficial Mtge. Co. of Ohio v. Currie*, 5th Dist. No. 2003CA00238, 2004-Ohio-5190 (holding mortgage liens do not fall

under the requirements of R.C. 2117.06); *GMAC Mtge. Corp. v. McElroy*, 5th Dist. No. 2004-CA-00380, 2005-Ohio-2837 (finding the property was subject to the mortgage lien and the heirs take the property subject to the lien and the purpose of recording statutes is to put other lien holders on notice and to prioritize liens); *BAC Home Loans Serv., LP v. Mowery Properties, Ltd.*, 10th Dist. No. 10AP-396, 2011-Ohio-1596 (holding the mortgage liens run with the property and remain against the title holder, not with the estate). A foreclosure claim "is not characterized as a claim against an estate, but rather as a claim in the nature of an in rem proceeding to reach the mortgaged property to satisfy a debt." *Weaver*, 10 Dist. No. 11AP-1065 at ¶ 22.

**{¶52}** In this case, there is no dispute Loudermilk executed a note and mortgage agreement in favor of appellee for the principal amount of $171,000 and Loudermilk defaulted on the note and mortgage. The validity of this mortgage and note is not affected by the fact that the mortgage was not recorded. The purpose of appellee's action was not to seek a personal judgment against Loudermilk or the estate, but instead was in the nature of an in rem proceeding to reach the mortgaged property, subject it to sale, and have the proceeds applied as payment for debt. Appellee specifically states it is not seeking a personal judgment against Loudermilk or the estate. Thus, the foreclosure action on the mortgage lien does not constitute a "claim against the estate" under R.C. 2117.06 and R.C. 2117.06 does not preclude appellee's right to bring an action in foreclosure. Appellants' assignment of error V is overruled.

## VI. Motion for Leave to Amend Pleadings

{¶53} Appellants argue the trial court erred by denying appellants leave to amend their pleadings. We disagree. Civil Rule 15(A) states "a party may amend his pleading only by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires." The decision whether to permit a party leave to amend his pleadings is within the trial court's sound discretion. *Nat'l Bank of Fulton Co. v. Haupricht Bros.*, 55 Ohio App.3d 249, 564 N.E.2d 101 (6th Dist. 1988). In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary, or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983).

{¶54} Appellees filed their complaint on January 27, 2010. Appellants filed their answer on February 25, 2010. After cross-dispositive motions had been filed and briefed by both parties, appellants filed a motion to amend their answer to assert counterclaims of negligence, slander of title, misrepresentation, constructive fraud, and equity. The trial court denied appellants' motion because of the "late date" of the motion and because the cross-dispositive motions had been fully briefed. Because the dispositive motions had been fully briefed ready for the trial court to rule on and the claims appellants sought to bring were tort claims rather than compulsory counterclaims, we do not find the trial court acted unreasonably, arbitrarily, or unconscionably in denying appellants' motion for leave to amend. Assignment of Error IV is overruled.

{¶55} Based on the foregoing, we find the trial court did not err in granting summary judgment to appellee.

{¶56} Appellants' Assignments of Error I, II, III, IV, V, and VI are therefore overruled.

{¶57} The judgment of the Fairfield County Common Pleas Court is affirmed.

By Gwin, P.J.,

Hoffman, J., and

Farmer, J., concur

_____
HON. W. SCOTT GWIIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER

WSG:clw 0522

[Cite as *Bank of New York Mellon Trust Co, N.A. v. Loudermilk*, 2013-Ohio-2296.]

IN THE COURT OF APPEALS FOR FAIRFIELD COUNTY, OHIO

FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| THE BANK OF NEW YORK MELLON TRUST CO., N.A. | : | |
| | : | |
| | : | |
| Plaintiff-Appellee | : | |
| | : | |
| | : | |
| -vs- | : | JUDGMENT ENTRY |
| | : | |
| CHARLES D. LOUDERMILK, DECEASED, ET AL. | : | |
| | : | |
| | : | |
| | : | |
| Defendants-Appellants | : | CASE NO. 2012-CA-30 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Fairfield County Common Pleas Court is affirmed. Costs to appellant.

_____
HON. W. SCOTT GWIIN

_____
HON. WILLIAM B. HOFFMAN

_____
HON. SHEILA G. FARMER