Wiljmams, J.
 

 The plaintiff, Francis A. Wagner, as trustee, on January 26, 1929, took out insurance policies on a manufacturing plant in six companies in the aggregate sum of $100,000 for a term of one year, of which amount $20,000 was with the defendant, National Fire Insurance Company. The sound value of the whole property for insurance purposes was fixed by appraisement at $112,843. A reduction in rate was allowed under 90% coinsurance clauses contained in the policies, and $100,000, the total amount of insurance, represented approximately 90% of the appraised value. The property covered by these policies was described therein in the same language. The description in the policy sued on is: “$20,000 on the five story, approved roof, brick building, occupied as vacant. * * *
 

 “All the above described property being situated
 
 *408
 
 at Nos. 227-239 East First street, Dayton, state of Ohio.”
 

 The designation as to the street numbers correctly indicated the tract of land on which the plant was located.
 

 On January 26,1930, the expiration date, six renewal policies were issued for a term of one year, all practically identical with the previous policies in form and description of property. On January 26, 1931, similar renewal policies were issued for a like term with the description in the same language.
 

 The insured structure was composed of four units or sections, two of which were five and two four stories high, and, in addition to being under single ownership, was adapted to use and had been used in its’ entirety for manufacturing purposes. It had a single heating plant which furnished heat to all units, a reservoir, pressure tank and pump which supplied water for the sprinkler throughout all sections of the plant, and a single office serving the whole. Each section abutted, adjoined and was in contact with another section and adjoining sections communicated with each other by
 
 *409
 
 openings. The plan on page 408 fairly illustrates the arrangement.
 

 
 *408
 

 
 *409
 
 On March 12, 1931, a small loss by fire occurred which was paid by the insurance companies and the policies were reinstated in their original form, and amount by written endorsement.
 

 On August 8, 1931, another fire occurred in this plant and the loss resulting is the one involved in this case.
 

 There is a dispute whether section
 
 “A”
 
 was or was not wholly destroyed in this fire; appellants claim that it was and for the purposes of this opinion we are assuming that this claim is well founded. There were trifling damages caused to another section but no damage at all to the remaining two.
 

 A full settlement of this fire loss was' made upon the theory that the damage done was only a partial loss sustained to the whole structure. Plaintiff received from the six insurance companies $44,382.90, of which amount the defendant insurance company paid as its pro rata share $8,876.58. At the time of settlement plaintiff executed to the defendant insurance company a written release showing the sum received was in full satisfaction of all claims and demands for loss and damage. Upon the payment of money and execution of the release, plaintiff surrendered the policy to the defendant company. Thereafter the plaintiff conceived the notion that he had settled for less than the amount due him. His' conception was based on the assumption that section “A” was a separate building and had been totally destroyed and, therefore, he was entitled to the whole amount of insurance thereon under the Valued Policy Law (Section 9583, General Code) which reads as follows:
 

 “A person, company or association insuring any building or structure against loss of damage by fire or lightning, by renewal of a policy, shall cause such building or structure to be examined by his or its agent,'.
 
 *410
 
 and a full description thereof to be made, and its insurable value fixed, by him. In the absence of any change increasing the risk without the consent of the insurers, and also of intentional fraud on the part of the insured, in case of total loss, the whole amount mentioned in the policy or renewal upon which the insurer received a premium, shall be paid.”
 

 The theory of the plaintiff was that the agent of the insurance companies had fixed a valuation on each unit separately, in which process section “A” was appraised at $64,875, and by adding together the determined amounts' for each of the four units he had arrived at an aggregate value of $112,843 for the structure as a whole; that in reality each building was insured separately, and that the description of the property as one building was an error or a misdescription or, at least, a latent ambiguity susceptible of explanation by parol.
 

 Acting on that theory the plaintiff brought suit to recover the difference between the amount received from the defendant insurance company in settlement and the amount he would be entitled to receive from that company for a total loss’ of section “A” under the Valued Policy Law.
 

 If it was proper under the evidence to treat section “A” as one building separately insured for an amount certain and totally destroyed by fire, and if plaintiff’s claim was not barred by the written release entered into at the time of settlement, then he would be entitled to recover the full amount of the insurance on that unit.
 

 This court does not hold that the various sections composing the building insured were of such a nature that it was one building as a matter of law. It is not necessary to decide that question. The various sections were so united and unified that a contract of insurance, designating and treating the whole plant as one structure, would bind the contracting parties in accordance with its terms. Since the insurance policy
 
 *411
 
 by its' terms covered the whole as one building, the plaintiff, for the total destruction of section “A,” one of the units, cannot recover unless he is permitted to show by parol evidence that the parties by the true agreement in reality insured each of the four sections as a separate building, or, being denied that alternative, can have the instrument reformed to show the alleged agreement.
 

 Counsel for appellants insist that, where there is a mutual mistake of fact by parties to a contract of insurance, and, as a result, misdescription of the property intended to be insured, no reformation is necessary as a prerequisite to a recovery thereon, and cite an annotation in 66 A. L. R., 767, where many cases are collected.
 

 That rule has' been frequently applied in cases of error in the description of the property insured where its identity and the true description thereof clearly appear from the face of the instrument or from extrinsic facts.
 
 American Central Ins. Co.
 
 v.
 
 McLanathan,
 
 11 Kan., 533;
 
 De Paola
 
 v.
 
 National Ins. Co.,
 
 38 R. I., 126, 94 A., 700;
 
 French
 
 v.
 
 State Farmers’ Mut tual Hail Ins. Co.,
 
 29 N. D., 426, 151 N. W., 7;
 
 Phenix Ins. Co.
 
 v.
 
 Gebhart,
 
 32 Neb., 144, 49 N. W., 333;
 
 State Ins. Co. of Des Moines, Ia.,
 
 v.
 
 Schreck,
 
 27 Neb., 527, 43 N. W., 340;
 
 Kansas Farmers’ Fire Ins. Co.
 
 v.
 
 Saindon,
 
 52 Kan., 486, 35 P., 15;
 
 Phenix Ins. Co.
 
 v.
 
 Allen,
 
 109 Ind., 273, 10 N. E., 85.
 

 An insurmountable difficulty arises in applying that principle in the instant case. There was no misdescription of the property and no ambiguity in the description, either latent or patent. As stated, plaintiff has received full settlement and payment for a partial loss under the contract of insurance as it stands. • What he seeks’ to do now is to show a different contract under which each unit is insured separately for a named amount, so that he can recover “the whole amount mentioned in the policy or renewal,” for the total loss of
 
 *412
 
 section “A” (less the proportionate share of the amount already received which is applicable to that unit). It is not a correction of the description by parol evidence that is sought, but a contradiction or variation of the terms of the written contract, in order to create a right of action that would not otherwise exist. To allow the terms of the policy sued on to be varied in this manner would violate the parol evidence rule which is imbedded in our jurisprudence; an insurance policy is to be construed like any other contract and such a written instrument, complete in itself, cannot be contradicted, varied or modified by parol.
 
 Blosser
 
 v.
 
 Enderlin,
 
 113 Ohio St., 121, 148 N. E., 393;
 
 Fidelity & Casualty Co. of New York
 
 v.
 
 Hartzell Bros. Co.,
 
 109 Ohio St., 566, 143 N. E., 137;
 
 Monnett
 
 v.
 
 Monnett, Admr.,
 
 46 Ohio St., 30, 17 N. E., 659.
 

 The Court of Appeals was right in unanimously holding that there could be no recovery on this contract under the Valued Policy Law without reformation.
 

 Was the position of the majority of the Court of Appeals sound in remanding the cause to the trial court for determination on the issue of reformation?
 

 Mutual mistake is the mistake of all parties to the contract. Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties. Equity, however, will never make a new contract for those who executed the writing sought to be reformed.
 
 Fidelity & Casualty Co. of New York
 
 v.
 
 Hartzell Bros. Co., supra.
 
 It is established that in a proper case it is admissible to show the true agreement by parol
 
 (Davenport
 
 v.
 
 Widow and Heirs at Law of Sovil,
 
 6 Ohio St., 459); but the law attaches a certain sanctity to written instruments and
 
 *413
 
 therefore reformation is available only when the mutual mistake is shown by clear and convincing evidence.
 
 Stewart
 
 v.
 
 Gordon,
 
 60 Ohio St., 170, 53 N. E., 797.
 

 In the instant case there is no claim of fraud or the existence of any other basic element warranting reformation except mutual mistake as to the description. To warrant reformation it must appear from the evidence that the contract was in fact that each of the four sections should be described in the policy and insured thereunder as four separate buildings instead of one, and that the mistake in describing the plant as one building was mutual.
 

 There is' no evidence in the record to show that any agreement was made other than the one expressed in the policy. The plaintiff testified in substance that the insurance agent who wrote the policies availed himself of the services of a company which made the appraisal by separate units and then the separate items were totaled so as to ascertain the- valuation of the entire plant. Afterwhrds this total was used in determining the 90% provided for in the coinsurance clause which was fixed at $100,000 (a little less than the exact percentage). Certainly evidence of this kind does not constitute mutual mistake according to the accepted principles of equity jurisprudence.
 

 Impetus is lent to this conception by the statement of counsel for appellants in their brief as to the method by which he arrived at the calculation of his recovery. The language employed therein is: “The aggregate of the insurable values fixed for the four buildings was the sum of $112,843 and the total amount of insurance upon which he paid premiums was slightly less than*. 90% of that amount, or the sum of $100,000. The insurable value fixed for Building A was the sum of $64,875. Assuming that the amount of insurance in force had been exactly 90% of the total insurable values, then 90% of $64,875 or the sum of $58,387.50
 
 *414
 
 was the portion of the total amount of insurance ($100,000) which Wagner had actually carried on Building A. This was the sum (except for the slightly less than 90% factor) which should have been ‘mentioned in the policy.’ It was the recoverable amount in the event of total loss of Building ‘A.’ ”
 

 This cogent summary of appellants’ position shows that their contentions are not impeccable. Obviously the intention of the parties was to insure the structure as a whole. There was never a computation of 90% of the sound value of each of the four units; but merely of 90% of the whole structure, and then only approximately. Therefore there was no meeting of the minds on the amount of insurance on each unit and no agreement that each unit should be insured separately.
 

 Even though we assume that there was a total loss of section “A” there would be only a partial loss of the building described in the policy and so no right of recovery under the Valued Policy Law. Since there could be no reformation and no recovery without it, final judgment must be entered as' a matter of law in favor of the appellee, National Fire Insurance Company. _
 

 _ Having reached this conclusion this court finds it unnecessary to give further consideration to the defenses of accord and satisfaction and release.
 

 The judgment of the Court of Appeals insofar as it reverses the judgment of the Court of Common Pleas is affirmed, and insofar as it remands the cause for trial on the question of reformation of the insurance policy is reversed and final judgment entered for appellee.
 

 Judgment accordingly.
 

 Weygandt, C. J., Jones, Matthias, Day, Zimmerman and Myers, JJ., concur.