**CIGNA INSURANCE COMPANY,**
Plaintiff,

v.

**COOPER TIRE & RUBBER,**
**INC., Defendant.**

**No. 3:99CV7397.**

United States District Court,
N.D. Ohio,
Western Division.

Oct. 31, 2001.

---

Deborah M. Minkoff, Cozen & O'Connor, Philadelphia, PA, Denise Brinker Bense, Michael J. Smith, Robert R. Reeder, Cozen & O'Connor, West Conshohocken, PA, Joseph P. Dawson, Vassar, Dills & Dawson, Toledo, OH, for Cigna Insurance Company, Plaintiff.

Alan H. Fairley, George T. Caplan, Jeffrey M. Jacobberger, Whitney E. Stein, Troop Steuber Reddick Pasich & Tobey, Los Angeles, CA, Amy J. Fink, Donald R. Erlandson, Tyrone R. Childress, Howrey Simon Arnold & White, Los Angeles, CA, Margaret J. Lockhart, Cooper & Walinski, Toledo, OH, for Cooper Tire and Rubber, Inc., Defendants.

## ORDER

CARR, District Judge.

This is a declaratory judgment action brought by Cigna Insurance Company (Cigna), against its insured, Cooper Tire & Rubber, Inc. (Cooper). As filed, Cigna's complaint sought a declaration that its products liability policies with Cooper provide contingent liability coverage only for liability arising out of foreign sales of Cooper's tubes and tires manufactured in the

United States. In an earlier opinion, I rejected that contention, and held that the policies covered Cooper's tires and tubes regardless of the place of their sale. Accordingly, I dismissed the first count in Cigna's complaint, which sought the more limited interpretation (i.e., that its policies covered only tires and tubes sold outside the United States).

Cigna's complaint also plead, in the alternative, a demand for reformation. Cigna alleges that, if the policies cover (as I have held that they do) tires and tubes sold anywhere, that such coverage was not intended by the parties. Instead, according to Cigna, the parties intended to limit coverage to tires and tubes sold outside the United States.

Pending is a renewal of Cooper's demand for production of documents relating to reinsurance and reserves. Cigna opposes the demand, and has produced documents for in camera inspection. For the reasons that follow, the demand for production shall, with one exception, be granted.

Cigna's opposition asserts: 1) the irrelevance of reinsurance and reserves to Cigna's claim for reformation; 2) non-discoverability of such information under the Federal Rules of Civil Procedure; and 3) as to one document, the attorney client privilege.

■ In their discussion of Cooper's demand for production, both parties contend that the determinative issue in Cigna's reformation claim is the parties' intent. It appears, rather, that there is a preliminary issue: mutual mistake. Thus, as stated in *Wagner v. National Fire Ins. Co.,* 132 Ohio St. 405, 8 N.E.2d 144, (1937):

> Reformation is available where it is shown that the written instrument does not express the true agreement entered

into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties.

*See also Lincoln Elec. Co. v. St. Paul Fire and Marine Ins. Co.,* 10 F.Supp.2d 856, 877 (N.D.Ohio 1998); [1] *Mason v. Swartz,* 76 Ohio App.3d 43, 600 N.E.2d 1121,1125–26 (1991) (reformation "is an equitable remedy whereby a court modifies the instrument which, due to mutual mistake on the part of the original parties to the instrument, does not evince the actual intention of those parties.").

■ Mutual mistake must be proved by clear and convincing evidence. *Stewart v. Gordon,* 60 Ohio St. 170, 53 N.E. 797 (1899) (syllabus 1). *Accord. Wagner,* 132 Ohio St. at 412, 8 N.E.2d at 148; *Lincoln,* 10 F.Supp.2d at 877.

■ Even if mutual mistake has been shown, reformation of the contract depends on determination of what the parties mutually intended: "No reformation of an instrument can be made that does not conform to the intention of both parties; the court cannot, by reformation, make a new contract." *Wagner,* 132 Ohio St. at 412, 8 N.E.2d 144, at 148. *Accord, Stewart, supra* (Syllabus 2). Reformation, accordingly, involves a two-step inquiry to determine: 1) whether there was a mutual mistake, and 2) if so, what the parties mutually intended.

■ Mistake and intent can be proved by evidence admitted under Fed.R.Evid. 404(b). Evidence relating to later interpretation of a policy has been held to be admissible in a reformation case. *Fitzgerald v. Cantor,* 1999 WL 64480, *2 (Del.Ch., Jan 28, 1999).

---

**1.** Although *Lincoln Electric* refers to unilateral mistake, the state court reformation cases cited herein consistently refer to mutual mistake.

This case is, moreover, somewhat unusual, in that Cigna initially agreed to cover claims arising from accidents in Mexico where the allegedly defective tires were sold in the United States. At some point Cigna stopped providing coverage, contending that there was no coverage unless the tires had been sold elsewhere than in the United States.

In light of this circumstance, the possibility of mistake when the policy was entered into may be heightened. Post-policy interpretation of the scope of coverage may, accordingly, be even more relevant. In any event, even if not relevant for purposes of admissibility at trial, materials evincing post-policy interpretation are, under the circumstances of this case, more discoverable than otherwise they might be where there had been no change in coverage in medias res

Reinsurance is a means of spreading risks that would be too great for a single insurance company to allow itself to be exposed to. To be sure, as argued by Cigna, reinsurance may serve various purposes and involve differing commercial interests and concern. Nonetheless, acquisition of reinsurance may also manifest a belief that exposure may be at a level beyond that which the company might be able to afford on its own. The lower the risk, the less the need for reinsurance; and, correspondingly, the greater the risk, the more the need for reinsurance.

Reserves set aside for claims likewise express, to some extent, though not exclusively, an insurer's estimate of its potential exposure. While a reserve may also manifest many other considerations, the likely risk of loss and the potential amount of loss necessarily play a role in computing a reserve. Here, as with reinsurance, it would appear that where the risk of loss is greater, the reserve will be larger. An important component of the risk of loss is whether the claim is covered. A change in the pattern of reserves between before and after the decision to withhold coverage may be probative on the issues of mistake and intent.

I reject, accordingly, Cigna's arguments about the non-relevance of the documents, at least at this stage. Such rejection implicitly means that I also reject Cigna's claim that the documents are not discoverable under Fed.R.Civ.P. 26.

Cigna claims that one of the documents is covered by attorney client privilege. (Doc. 88, Exh. C) (under seal). In light of that claim, and as well, the apparent insignificance of the material redacted from it, it will not be necessary for it to produce that document along with the others that it must produce in pursuant to this order.

In light of the foregoing, it is hereby

ORDERED THAT Cigna's opposition to the production of requested information re. reinsurance and reserves be, with the exception of Doc. 88, Exh. C (under seal), be, and the same hereby is overruled; said materials to be produced forthwith.[2]

So ordered.

---

**2.** This decision does not alter, implicitly or explicitly, my prior decision to bifurcate the coverage and bad faith issues for trial. Though this decision may result in some dis-covery that might arguably relate to both issues, the gates have not been opened to unrestricted discovery relative solely to the bad faith claim.