[Cite as *Robenolt v. Zyznar*, 2014-Ohio-2593.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| ARDEL ROBENOLT, et al., | ) | |
| | ) | |
| PLAINTIFFS-APPELLEES, | ) | |
| | ) | CASE NO. 13 MA 129 |
| V. | ) | |
| | ) | OPINION |
| J. GARY ZYZNAR, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLANT. | ) | |

CHARACTER OF PROCEEDINGS:       Civil Appeal from Court of Common Pleas of Mahoning County, Ohio Case No. 11CV2328

JUDGMENT:       Affirmed

APPEARANCES:

For Plaintiffs-Appellees       Attorney Matthew C. Giannini
1040 S. Common Place, Suite 200
Youngstown, Ohio 44514

For Defendants-Appellant       Attorney Eric C. Johnson
12 W. Main St.
Canfield, Ohio 44406

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Mary DeGenaro

Dated: June 13, 2014

DONOFRIO, J.

{¶1} Defendant-appellant J. Gary Zyznar appeals the decision entered in the Mahoning County Common Pleas Court granting plaintiffs-appellees Ardell and Eileen Robenolt reformation of a deed to reflect that they retain the oil and mineral rights to property they sold to Zyznar.

{¶2} The facts of this case are generally undisputed. The Robenolts own approximately 48 acres in Poland Township, Mahoning County, Ohio. They had inherited the property in 2006. In addition to building a home on the property for themselves and leasing the oil and gas rights to the property to a local drilling company, they posted a sign advertising some of the property for sale.

{¶3} Zyznar contacted Ardell Robenolt (Robenolt) about purchasing an approximately 13 acre portion of the land with the intention of having a home built on it. On March 24, 2010, the parties entered into a real estate sales contract specifically providing that the Robenolts would retain the mineral rights to the property.

{¶4} At the original closing, Zyznar recognized that there was a problem with the legal description of the property being conveyed, particularly as it related to the size of the parcel. He also realized that the deed did not contain any reservation of mineral rights, but did not bring this omission to anyone's attention.

{¶5} Earlier, Zyznar's home builder had recommended an increase in the size of the parcel to include a nearby tree line. As Robenolt had earlier agreed to enlarge the parcel beyond what he had advertised for sale to facilitate Zyznar's plans to build the home, he acquiesced in the re-execution and rerecording of a corrected deed reflecting the correct legal description which included the tree line.

{¶6} Subsequently, the Robenolts realized that their contractual right to the mineral rights had not been included in the deed, but Zyznar refused to agree to a corrective deed. The Robenolts then sued Zyznar, seeking rescission and reformation of the deed based upon mutual mistake. The case then proceeded to discovery, including the taking of Robenolt's and Zyznar's depositions. The Robenolts later added Chesapeake Exploration, LLC as a party defendant, but then reached agreement with it resulting in it being voluntarily dismissed from the case,

without prejudice.

{¶7} Both parties filed summary judgment motions which the trial court denied. The case proceeded to a bench trial before a visiting judge. Robenolt, Zyznar, and Zyznar's home builder each testified. In a judgment entry filed on August 13, 2013, the court found that there was a mutual mistake concerning the Robenolts' retention of the mineral rights and ordered reformation of the deed. This appeal followed.

{¶8} Zyznar raises two assignments of error. Zyznar's first assignment of error states:

THE APPEALS COURT SHOULD OVERTURN THE TRIAL COURT'S RULING BECAUSE THE MUTUAL MISTAKE EXCEPTION TO THE DOCTRINE OF MERGER IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.

{¶9} Appellate review of the manifest weight of the evidence in a civil case is much more deferential to the trial court than in a criminal case. *State v. Wilson,* 113 Ohio St.3d 382, 865 N.E.2d 1264, 2007-Ohio-2202, ¶ 26. The civil manifest weight of the evidence standard provides that judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence. *Id.* at ¶ 24, 865 N.E.2d 1264, citing *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). The reviewing court is obliged to presume that the findings of the trier of fact are correct. *Id.,* citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81, 461 N.E.2d 1273 (1984). This presumption arises in part because the fact-finder occupies the best position to watch the witnesses and observe their demeanor, gestures, eye movements, and voice inflections and to utilize these observations in weighing credibility. *Id.* "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate

ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Id.*

**{¶10}** Generally, under the merger doctrine, when a deed is delivered and accepted without qualification, the underlying purchase contract becomes merged into the deed and a cause of action no longer exists upon the contract. *Fuller v. Drenberg,* 3 Ohio St.2d 109, 209 N.E.2d 417 (1965), paragraph one of the syllabus. Instead, the purchaser is limited to the express covenants in the deed. *Fuller,* 3 Ohio St.2d at 111, 209 N.E.2d 417, citing *Brumbaugh v. Chapman*, 45 Ohio St. 368, 13 N.E.2d 584 (1887). However, one exception to the merger doctrine that has evolved is mistake. *Mayer v. Sumergrade,* 111 Ohio App. 237, 239, 167 N.E.2d 516 (8th Dist.1960).

**{¶11}** When there is a mutual mistake by the parties to an instrument resulting in an instrument that does not evince the actual intention of those parties, equity allows for reformation of the instrument to reflect the real intention of the parties. *Wagner v. Natl. Fire Ins. Co.,* 132 Ohio St. 405, 412, 8 N.E.2d 144 (1937). Reformation is available only when the mutual mistake is shown by clear and convincing evidence. *Id.* at 412-413, 8 N.E.2d 144.

**{¶12}** Zyznar argues that the evidence demonstrated, at best, that there were unilateral mistakes on behalf of the Robenolts. He argues there was no evidence that he had made any mistakes. In response, the Robenolts contend that there was competent, credible evidence of a mistake as shown by the purchase agreement in which they specifically retained their mineral rights to the property.

**{¶13}** In this case, there was competent, credible evidence to support the trial court's finding of mutual mistake. As the trial court noted, here, the real estate sales contract was the best evidence of the parties' true intent. *See JLJ Inc. v. Rankin & Houser, Inc.*, 2d Dist. No. 23685, 2010-Ohio-3912, ¶ 41. And it clearly stated that the Robenolts were retaining their mineral rights to the property. In bold and underlined typeface, it stated, "the owner shall retain any and all oil and mineral rights on the property." (Plaintiff's Exhibit 2.) This constitutes clear and convincing evidence that

the execution and recording of the deed without that reservation was a mutual mistake.

**{¶14}** Aside from the clear language of the sales contract, there was other evidence that supports the trial court's finding of mutual mistake. Zyznar himself testified at trial about two issues that arose during negotiations with Robenolt. One concerned the addition of the tree line to the parcel and the other was the mineral rights:

Q     Did you have any discussions with him about oil and gas or mineral rights after you signed that second agreement?

A     Yes.

Q     Okay. Describe those.

A     It was mentioned that I wanted it retained. He would say he wanted it retained or not say anything. You know, very similar conversations we had about the treeline. He objected to me wanting -- vehemently objected, that I was going to cut all the trees down and he was not going to give me the trees. I wanted a treeline just in case he eventually died and the new owner cut down all my trees. So I wanted some control on that side of the treeline. Finally, it was when we were out there with my builder, he was like, you want some of those trees. And that's when I called him again, talked to him again about that. And he changed his mind --

Q     Okay.

A     -- and granted me some treeline.

Q     Did he ever explicitly change his mind verbally or in writing -- or verbally to you about the oil and gas minerals?

A     No.

* * *

Q     Now, your testimony on direct examination is that you contacted Mr. [Robenolt] a number of times about the timber line and about the oil and gas, correct?

A     Yes.

Q     And he said, according to your testimony, that he finally gave in and gave you an additional percentage of land so that you could have a treeline, correct?

A     Correct.

Q     But through this whole negotiation, he was firm and never agreed to give you the oil and gas rights, correct?

A     In our conversations, he said no. In other conversations, he didn't say anything.

Q     But he never said yes, correct?

A     Correct.

(Tr. 62-63, 80.)

{¶15} Thus, while Robenolt finally agreed to include the tree line in the $300,000 purchase price, he never wavered in his position that he would be retaining mineral rights. (Tr. 63, 80.)

{¶16} A very similar case decided by this court also supports the trial court's decision. In *Estate of Sudimak v. Ross*, 7th Dist. No. 94 C.A. 178, 1995 WL 697832 (Nov. 21, 1995), the parties reached a purchase agreement in which the owner clearly retained the mineral rights to the property. The owner's attorney acknowledged that he had mistakenly omitted the mineral rights reservation from the deed. The owner sued the purchaser seeking reformation of the deed on the basis of the mutual mistake. Following a bench trial, the trial court granted reformation and the purchaser appealed. On appeal, this court rejected the purchaser's argument that it was only a unilateral mistake:

Based upon the testimony presented in the trial court, it is a justifiable conclusion that all parties were fully aware that, upon transfer of the real estate in question, the [owner] was to retain all of the mineral rights. Upon transfer of the real estate, the [purchaser] mistakenly accepted the real estate without the agreed upon reservation. This was a mistake on their part. The [owner], in executing the deed, mistakenly left the mineral reservation out of the transferring instrument. As such, there was a mistake on the part of both parties.

**{¶17}** In sum, as in *Sudimak*, all parties were fully aware that, upon transfer of the real estate in question to Zyznar, the Robenolts were to retain all of the mineral rights. This was evidenced by the real estate sales contract and Zyznar's own testimony at trial. The omission of the mineral rights retention from the deed was, therefore, a mutual mistake and the Robenolts are entitled to equitable reformation of the deed.

**{¶18}** Accordingly, Zyznar's first assignment of error is without merit.

**{¶19}** Zyznar's second assignment of error states:

THE APPEALS COURT SHOULD OVERTURN THE TRIAL COURT'S RULING BECAUSE IT CLEARLY CONTRADICTS A PLAIN READING OF THE PURCHASE AND SALE AGREEMENT.

**{¶20}** The real estate sales contract in this case clearly stated that its provisions would not survive closing unless expressly noted otherwise. Zyznar points out that the mineral rights reservation provision contained in the sales contract contained no such language that it would survive closing.

**{¶21}** As explained under Zyznar's first assignment of error, mutual mistake is a recognized exception to the merger doctrine. Here, Zyznar's argument simply ignores the equitable nature of the reformation remedy when mutual mistake is shown by clear and convincing evidence.

**{¶22}** Accordingly, Zyznar's second assignment of error is without merit.

**{¶23}** The judgment of the trial court is affirmed.

Vukovich, J., concurs.

DeGenaro, P.J., concurs.