[Cite as *Madeira Crossing, Ltd. v. Milgo Madeira Properties, Ltd.*, 2014-Ohio-4179.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

MADEIRA CROSSING LIMITED,  :  APPEAL NO. C-130524
  TRIAL NO. A-1203805

   Plaintiff-Appellee,  :

  :  *O P I N I O N.*

  vs.  

  :

MILGO MADEIRA PROPERTIES,
LTD.,  :

   Defendant-Appellant.  :


Civil Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed from is: Affirmed

Date of Judgment Entry on Appeal: September 24, 2014


*Keating Muething & Klekamp PPL, William A. Posey* and *Charles M. Miller,* for Plaintiff-Appellee,

*Taft Stettinius & Hollister LLP, Stephen M. Griffith, Jr.*, and *Beth A. Bryan*, for Defendant-Appellant.


Please note: this case has been removed from the accelerated calendar.

**CUNNINGHAM, Presiding Judge.**

{¶1}    The action below was brought by plaintiff-appellee Madeira Crossing Limited ("Madeira Crossing") for the correction of a ground lease on the basis that, by the mutual mistake of the original lessor and lessee, the lease included a rent-adjustment provision that did not reflect the true intention of the contracting parties. According to Madeira Crossing, the contracting parties had intended that the lessee's rent would not increase until the lessee received a 25 percent increase in rent from the principal tenant.

{¶2}    Defendant-appellant Milgo Madeira Properties, Ltd., ("Milgo") conceded that there was a mistake in the lease, but in its counterclaim contended that the mistake was only in the rent-adjustment formula. According to Milgo, the unambiguous intent of the contracting parties with respect to the formula was set forth elsewhere in the rent-adjustment provision, which contained language for an adjustment in rent proportionate to the changes in the rent due to the lessee from the principal tenant, but no language about a 25 percent cushion.

{¶3}    After denying a motion for summary judgment filed by Milgo, the trial court held a trial on the claims. Over Milgo's objection, the trial court admitted parol evidence from Madeira Crossing to demonstrate that the lease did not reflect the true agreement of the parties. The trial court found in favor of Madeira Crossing, and reformed the lease to include a rent-adjustment provision that provided for the 25 percent cushion. The court accomplished this by changing the word "by" in the original lease to the word "to" in the reformed lease. Milgo now appeals, raising two assignments of error. We affirm.

## I. Background Facts

{¶4}   In the fall of 1987, Milgo Realty, Inc., ("Milgo Realty") a predecessor-in-interest to Milgo, leased the land, now a small shopping center, to H.A.I., Inc., ("H.A.I.") the predecessor-in-interest to Madeira Crossing.  Mildred Konnersman was Milgo Realty's only shareholder and its president.  Henry H. Hersch, the attorney for and the secretary of Milgo Realty, had negotiated the lease on behalf of Milgo Realty.

{¶5}   David Meyers and Larry Hilton were the owners of H.A.I.  J. Neil Gardner, the attorney for and assistant secretary of H.A.I., had negotiated on behalf of H.A.I.

{¶6}   The lease provided for an initial term of 30 years and six months, with four successive renewal terms of five years each.  Base rent was set at $60,000 for the first year.  At the time that Milgo Realty and H.A.I. entered into the lease, they contemplated that H.A.I. would develop the property and sublease part of the property to a principal tenant that would be a drug store.

{¶7}   At issue in this case is the meaning of the rent-adjustment  provision set forth in Article III, paragraph four of the lease, which provided:

> Commencing with the second anniversary of the execution of this Lease and annually thereafter, the base rent due Lessor from Lessee shall be adjusted *by* an amount equal to said base rent multiplied by 80% of the ratio of "Tenant Rent A" to "Tenant Rent B" where: Tenant Rent A is the monthly average of total rent due Lessee from the principal Tenant occupying the Demised Premises for each month of such occupancy during the 12-month period ending on the most recent anniversary date of this Lease, and "Tenant Rent B" is the

3

monthly average of total rent due Lessee from the principal Tenant occupying the Demised Premises during the 12-month period immediately following the original principal Tenant's opening for business at the Demised Premises.

The foregoing notwithstanding, no adjustment shall be made to reduce the rent due Lessor from Lessee below the Base Rent set forth above nor shall the amount of Tenant Rent B used in the calculation set forth above exceed $11.50 per square foot occupied. Adjustments may be down as well as up, but not below Base Rent.

*It is the intent of this adjustment to adjust the rent due Lessor from Lessee in proportion to the changes in rent due Lessee from the principal tenant* for reasons other than changes in the amount of space occupied by the principal tenant or the principal tenants [sic] obligations with respect to taxes, insurance, utilities and maintenance. Therefore, modifications to the calculations set forth above shall be made when required to equitably reflect the changes in the amount of space occupied by the principal tenant or changes in the obligations of the principal tenant to pay taxes, utilities or maintenance.

(Emphasis added.)

{¶8} When the formula set forth in this provision is applied as written, it results in an automatic and almost double yearly rent increase that is in no way proportionate to the change in rent due to Madeira Crossing from the principal tenant.

4

{¶9} Milgo Realty was first succeeded in interest by Milgo Realty Partnership. Neither entity sought to adjust the lessee's rent during the first five years of the lease. At some point before Mildred Konnersman's passing in 1998, she gifted the property to her daughter and her son, Paul Konnersman ("Konnersman"), who are the principals of Milgo.

{¶10} Beginning in 1992, Konnersman, on behalf of Milgo Realty Partnership, and later on behalf of Milgo, periodically asked the lessee about the lessee's increased rental payments from the principal tenant in an effort to determine whether the lessee owed additional rent under the rent-adjustment provision of the lease.

{¶11} In 2007, Konnersman began to more fully pursue the issue of a rent adjustment with Madeira Crossing, which had become H.A.I.'s successor-in-interest under the lease. Madeira Crossing was owned in part by Gardner, who informed Konnersman that the rent-adjustment provision was intended to be applied as a rent calculation provision with a 25 percent cushion. Madeira Crossing eventually filed an action for a declaratory judgment, which evolved to include competing claims for reformation.

## II. Evidence at Trial

{¶12} During a two-day bench trial, Madeira Crossing presented the in-court testimony of Gardner and the deposition testimony of Meyers. Gardner testified to the lease negotiations between Milgo Realty and H.A.I. in 1987, and he presented draft versions of the lease. He testified that Hersch had told him that he had full authority from Mildred Konnersman to negotiate the lease.

{¶13} According to Gardner, Meyers and Hilton had balked at any rent adjustment because they believed that the base rent was higher than the market rate

5

for the property, and because the ground lease was an absolute net lease and placed the risk of repairs and vacancies on the lessee. Therefore, they had rejected two draft proposals from Hersch on the issue. One draft, dated August 26, 1987, provided that the rent adjustment would be based on increases in the consumer price index ("CPI"). The CPI methodology was rejected by H.A.I., and the negotiations continued. The following draft, dated September 15, 1987, indicated that the base rent would be "increased by an amount equal to [] 80% of the relative percentage increase in" the principal tenant's rent. The draft specified that, by example, if the principal tenant's rent increased by 10 percent, the base rent payable to the lessor would increase by 8 percent. Gardner testified that his clients also rejected that rent-adjustment provision.

{¶14} Subsequently, on September 17, 1987, Gardner met with Meyers, Hilton, and Hersch to work out the outstanding issues regarding the lease. At this meeting, the representatives of H.A.I. had believed that Milgo Realty had accepted the lease without a rent-adjustment provision, but Hersch brought up the issue at the end of the day. Meyers and Hilton became frustrated. Hersch then left the room and returned with a handwritten "compromise" rent-adjustment provision. Gardner testified that when he read the draft compromise provision, he thought it was unclear and told Hersch so. Hersch then explained to Meyers, Hilton and Gardner that " 'by using a ratio—and the ratio being the current rent to the initial rent and applying 80 percent of the factor to that, that the new rent or current rent had to exceed 125 percent before the rent under land lease would increase.' " Hersch further explained that the formula provided that at "125 percent times 80 [percent], that's only 1.00, and so there would be no increase, and anything over that there would be an increase."

{¶15} The handwritten proposal also included language that is similar to the end paragraph in the rent-adjustment provision, which provides for proportionality. Gardner testified that he had suggested that the language added to the confusion, but Hersch had retorted that the proposed formula did provide for an increase in proportion to the rents, but that because of the formula, that increase would not occur until the lessee obtained at least a 25 percent increase in the rent from the principal tenant.

{¶16} Gardner said his clients, who were anxious to end the meeting, accepted the proposal. Subsequently, Hersch added the compromise rent-adjustment provision to the final lease, which was duly executed on October 13, 1987, by Hersch and Mildred Konnersman on behalf of Milgo Realty and Gardner and Hilton on behalf of H.A.I.

{¶17} Gardner explained to the court that the formula as drafted by Hersch and as adopted in the lease does not provide for the intended 25 percent cushion unless the provision is treated as one calculating the amount of the new rent, as opposed to one calculating the additional rent to be added to the base rent. Gardner demonstrated that this result is accomplished by replacing the word "by" with "to" in the third line of the first paragraph of the rent-adjustment provision.

{¶18} Gardner also explained that making that proposed change was consistent with the remainder of the provision because, unlike the other draft provisions, the compromise provision included a $60,000 floor below which rent could not decrease, a term which would not be necessary if the provision had truly been intended to be one calculating the amount to add to the base rent of $5,000 per month. Moreover, Gardner demonstrated by use of a graph that by changing the word "by" to "to" in the rent-adjustment provision and applying the formula, once

the 25 percent cushion is exceeded, the rent owed by the lessee increases in proportion to the additional dollars received from the principal tenant.

{¶19} Meyers's testimony confirmed that H.A.I. had entered into a ground lease for the to-be-built strip center. He recalled that Hersch had negotiated on behalf of the lessor, and that Hersch had proposed a formula that the parties subsequently adopted in the final lease concerning the rent adjustment. Meyers said that he agreed to the formula because Hersch had explained that it provided a 25 percent cushion. Meyers also testified, however, that he believed that after the threshold was met, the lessor would receive 80 percent of the increase in the principal tenant's rent.

{¶20} Konnersman, testifying on behalf of Milgo, acknowledged that he had not been a principal of Milgo Realty during the lease negotiations, he had not participated in the negotiations, including the meeting with Gardner, Meyers, Hilton, and Hersch, and that he had not spoken to Hersch or his mother, both of whom were deceased, about the intent of the provision at issue. But Konnersman agreed that the rent-adjustment formula contained in the lease did not reflect the agreement of the parties because it did not calculate adjusted rent based on the proportionate increase in the principal tenant's rent.

{¶21} Konnersman proposed that the lease be reformed to include one of two alternative formulas to calculate adjusted rent. The first formula provided as follows: Adjusted Rent = [((Tenant A − Tenant B) / Tenant B) x .80 x \$60,000] + \$60,000, where Tenant A was equal to the new rent for the principal tenant and Tenant B was equal to the original rent for the principal tenant. Under this formula, the rent owed Milgo would increase by an amount equal to 80 percent of the percentage increase in rent due from the principal tenant. And Milgo would not be

8

entitled to the automatic and large increases due under the formula as written, but would become entitled to rent increases only after the principal tenant's rent increased.

{¶22} Alternatively, Konnersman asked that the court reform the rent adjustment provision of the lease to provide that Milgo receive from Madeira Crossing the base rent plus an amount equal to 80 percent of the dollar amount of the rent increase received from the principal tenant. This was set forth by the following formula: Adjusted Rent = .80 (Tenant A-Tenant B) + $60,000.

{¶23} The trial court adopted Madeira Crossing's position and reformed the lease accordingly by changing the word "by" to "to" in the rent-adjustment provision.

### III. Analysis

{¶24} In its first assignment of error, Milgo argues that the trial court erred by considering parol evidence to determine the intent of the parties. In its second assignment of error, Milgo argues that the trial court's judgment was against the manifest weight of the evidence. Ultimately, Milgo asks this court to reverse the trial court's judgment and to enter a judgment reforming the original lease by substituting one of its two proposed alternative formulas that do not provide for a 25 percent cushion.

{¶25} The equitable remedy of reformation allows a court to change the language of the contract where the contracting parties' true intentions have not been expressed due to a mistake by both parties. *Wagner v. Natl. Fire Ins. Co.*, 132 Ohio St. 405, 412-413, 8 N.E.2d 144 (1937), cited in *Huber v. Knock*, 1st Dist. Hamilton No. C-080071, 2008-Ohio-5900, ¶ 6. The proponent of the reformation must demonstrate the mutual mistake by clear and convincing evidence. *Wagner* at 413, citing *Stewart v. Gordon*, 60 Ohio St. 170, 53 N.E. 797 (1899). Clear and convincing

evidence is the degree of proof necessary to "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus, quoted in *Huber* at ¶ 6.

### *A. Parol Evidence Rule*

{¶26} Milgo argues that the trial court erred by considering parol evidence on the issue of the parties' actual agreement with respect to the rent-adjustment formula. It claims that the court was not allowed to consider extrinsic evidence of the contracting parties' agreement because the rent-adjustment provision contained an "intent provision" that provided that "[i]t is the intent of this adjustment to adjust the rent due Lessor from Lessee in proportion to the changes in the rent due Lessee from the principal tenant * * *."

{¶27} The parol evidence rule generally prohibits the contradiction or supplementation of final written integrated agreements by evidence of prior or contemporaneous oral agreements or prior written agreements. *See Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000). The rule, however, does not apply to a claim for reformation based on mutual mistake. *See id.*

{¶28} Thus, when a party requests a reformation based on mutual mistake, the court may admit parol evidence to show the actual agreement of the parties. *Wagner*, 132 Ohio St. at 412, 8 N.E.2d 144; *Mason v. Swartz*, 76 Ohio App.3d 43, 50, 600 N.E.2d 1121 (6th Dist.1991), citing *Clayton v. Freet*, 10 Ohio St. 544, 546 (1860). This evidence includes "credible testimony concerning the conduct of the parties, any course of dealing between them, and the method of handling the specific transaction in question." *Castle v. Daniels*, 16 Ohio App.3d 209, 212, 475 N.E.2d 149 (2d Dist.1984). The verbal representations of the parties are generally the "principal

evidence" in proving the mutual mistake. *Harris v. Columbiana Cty. Mut. Ins. Co.*, 18 Ohio 116, 120 (1849).

{¶29} Although a trial court is not required to rely on the parol evidence when determining the agreement that the parties intended, *see Triangle Properties, Inc. v. Homewood Corp.*, 10th Dist. Franklin No. 12AP-933, 2013-Ohio-3926, ¶ 61, in this case, the trial court needed the parol evidence to discern the actual agreement of the contracting parties. The "intent provision" that Milgo relied upon did not provide a formula for calculating any adjustment in rent. Further, the "intent provision" when read in full provided that the parties intended that the rent be adjusted in proportion to the changes in the rent due to the lessee from the principal tenant "for reasons other than changes in the amount of space occupied by the principal tenant or the principal tenants [sic] obligations with respect to taxes, insurance, utilities, and maintenance." As the trial court noted, the language in the final paragraph of the rent-adjustment provision had to be considered in resolving the claim for reformation, but the trial court simply could not determine the true agreement of the parties based on the language of the "intent provision."

{¶30} Because Milgo failed to demonstrate error in the trial court's consideration of parol evidence to determine the allegation of a mutual mistake of the parties, we overrule the first assignment of error.

### B. Manifest Weight of the Evidence

{¶31} Next Milgo argues that the trial court's reformation of the lease in the manner consistent with Madeira Crossing's proposed formula was against the manifest weight of the evidence. In reviewing a claim that the judgment is against the manifest weight of the evidence, we weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether in

11

resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed and a new trial ordered. *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, ¶ 19-20. And we must make every reasonable presumption that is consistent with the trial court's judgment. *Id.* at ¶ 21, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3.

{¶32} The issue before the trial court on Madeira Crossing's claim was whether the evidence established, clearly and convincingly, that the parties to the lease had intended that the formula calculate adjusted rent with a 25 percent cushion. In support of its claim that the trial court lost its way, Milgo emphasizes that the 25 percent cushion that Gardner and Meyers had testified to was not expressly documented in the lease or in any contemporaneous documents. However, the 25 percent cushion is built into the formula when it is applied to calculate the adjusted rent instead of calculating the adjustment in rent. And other language in the rent-adjustment provision, which was drafted by the lessor, suggests that the parties to the lease had intended for the formula to calculate the adjusted rent, instead of the amount to add to the base rent. Specifically, the provision provides that no adjustment could be made that would reduce the rent *below* the base rent. This language would not be necessary if the formula calculated only an amount to be added to the base rent.

{¶33} Further, Milgo conceded that the provision as written did not reflect the true agreement of the parties, and it did not refute Gardner's and Meyers's testimony that H.A.I. would not have entered into the lease absent the 25 percent cushion. Milgo presented no extrinsic evidence of its own on the actual agreement of the original parties, and instead proposed two alternative formulas. A court

exercising its equitable powers in reformation can reform a contract so that it comports with the original agreement, but it cannot make a new agreement. *See Stewart v. Gordon*, 60 Ohio St. 170, 53 N.E. 797 (1899), paragraph two of the syllabus.

{¶34} We cannot say the trial court lost its way in evaluating the evidence. The rent adjustment formula that appeared in the lease provided that Adjusted Rent = B + [B * .80(A/99,499.92)], with B equal to the base rent of $60,000, and A equal to the principal tenant's rent for the previous year. This formula can be simplified as Adjusted Rent = (.48 * A) + B,[1] with the condition, set forth in the lease, that rent cannot decrease below $60,000. The formula adopted by the trial court removes the addition of the base rent to the formula, resulting in an equation of Adjusted Rent = .48 *A, with the proviso of the $60,000 floor. This formula creates proportionality because rents due under the lease would increase in proportion to the rents received from the principal tenant, although the increase would be triggered only after the principal tenant's rent increased by 25 percent.

{¶35} Admittedly, Madeira Crossing presented conflicting evidence on the original contracting parties' agreement concerning the amount of an adjustment due the lessor after the 25 percent cushion was passed. Both Gardner and Meyers had, at least at one time, believed that under the formula proposed by Hersch the lessor would receive more than 48 percent of the increases in the principal tenant's rent after the 25 percent cushion was passed. But the amount of the adjustment after the 25 percent increase was not material to the agreement, and this recollection was not based on either witness's application of the formula.

---

[1] $60,000 * .80 / $99,499.92 = 0.48.

**{¶36}** Ultimately, the greater amount of credible evidence clearly and convincingly demonstrates that the parties had agreed to adjust rent in accordance with the lease as reformed by the trial court. Therefore, we cannot say that the decision is against the manifest weight of the evidence. Accordingly, we overrule the second assignment of error.

### IV. Conclusion

**{¶37}** The judgment of the trial court is affirmed.

Judgment affirmed.

**HILDEBRANDT** and **DINKELACKER, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.