[Cite as *Inst. of Mgt. & Resources, Inc. v. Yost*, 2015-Ohio-5122.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Institute of Management and Resources, Inc. et al., | : | |
| | : | |
| Plaintiffs-Appellants, | | No. 15AP-219 |
| | : | (C.P.C. No. 13CV-682) |
| v. | | |
| | : | (REGULAR CALENDAR) |
| Dave Yost, Auditor of the State of Ohio et al., | : | |
| | | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on December 10, 2015

*Dinsmore & Shohl, LLP*, *Thomas P. Whelley, II* and *Susan D. Solle*, for appellant Institute of Management and Resources, Inc.

*FisherBroyles, LLP*, *Edmund F. Brown* and *Diem N. Kaelber*, for appellants Richard Allen Academy, Inc., Richard Allen Academy II, Inc., Richard Allen Academy III, Inc. and Richard Allen Preparatory, Inc.

*Michael DeWine*, Attorney General, *Sarah Pierce*, *Renata Y. Staff* and *Bridget C. Coontz*, for appellees.

APPEAL from the Franklin County Court of Common Pleas

KLATT, J.

{¶ 1} Plaintiffs-appellants, Institute of Management and Resources, Inc. ("IMR"); Richard Allen Academy, Inc.; Richard Allen Academy II, Inc.; Richard Allen Academy III, Inc.; and Richard Allen Preparatory, Inc., appeal a judgment of the Franklin County Court of Common Pleas that granted summary judgment to defendants-appellees, Dave Yost,

Ohio auditor of state, and Mike DeWine, Ohio attorney general. For the following reasons, we affirm.

{¶ 2} IMR is the contractual management company for four community schools, Richard Allen Academy, Inc.; Richard Allen Academy II, Inc.; Richard Allen Academy III, Inc.; and Richard Allen Preparatory, Inc. (hereinafter collectively referred to as "the schools"). On September 1, 2006, IMR entered into separate but identical management agreements with each of the schools. Each management agreement was later modified by an addendum that deleted Section 3 of the original agreement and replaced it, effective July 1, 2009, with the following provision:

> **Amount.** For each month of the term hereof [the School] shall pay to [IMR] a management fee of Ten Percent (10%) of the total revenues of the School from all sources after deduction of STRS, SERS, and Audit Adjustments. [The School] will pay to [IMR] Eighty-seven percent (87%) of the remaining 90% for [a] School Expense Fee incurred on behalf of the School for District[-]wide operational services, i.e., transportation, supplies, textbooks, rents, utilities, etc.

{¶ 3} Both IMR and the schools interpreted revised Section 3 to mean that the schools would remit to IMR 10 percent of their total revenues to pay the management fee and 87 percent of their total revenues to pay the school expense fee.[1] Thus, IMR would receive a total of 97 percent of the schools' total revenues, and the schools would retain 3 percent of the total revenues.

{¶ 4} In 2010, the auditor of state's office initiated a special audit of the schools for the period of July 1, 2008 to June 30, 2010. Subsequently, the auditor of state's office conducted regular audits of the schools for the fiscal years ended June 30, 2011 and June 30, 2012. In all of the audits, the auditor of state's office applied the two-step formula set forth in revised Section 3 to determine how much money the schools owed to IMR. The auditor of state's office first calculated the 10 percent of total revenues owed as a management fee, and then multiplied the remaining 90 percent of total revenues by 87 percent to determine the amount of the school expense fee.

---

[1] For ease of discussion, we will omit reference to the deductions the addendum necessitated when we discuss the schools' total revenues. All references to "total revenues" implicitly include the enumerated deductions.

{¶ 5} The difference between how plaintiffs and the auditor of state's office interpreted revised Section 3 resulted in a disagreement regarding how much money the schools owed IMR. Under IMR's and the schools' interpretation, the schools owed IMR 97 percent of their total revenues. On the other hand, under the auditor of state's interpretation, the schools owed IMR approximately 88 percent of their total revenues. The auditor of state's office concluded that the schools had overpaid IMR by more than one million dollars. IMR and the schools contested that conclusion.

{¶ 6} IMR filed a declaratory judgment action asking the trial court to interpret revised Section 3 as it did.[2] Both plaintiffs and defendants moved for summary judgment. In a decision and entry dated February 26, 2015, the trial court granted defendants' motion for summary judgment and denied plaintiffs' motion for summary judgment. The trial court found that revised Section 3 unambiguously required the schools to pay IMR (1) a management fee totaling 10 percent of their total revenues and (2) a school expense fee totaling 87 percent of the amount of total revenues remaining after payment of the management fee, i.e., 90 percent of the total revenues.

{¶ 7} Plaintiffs now appeal the February 26, 2015 judgment, and they assign the following errors:

> [I.] The trial court erred by granting summary judgment in favor of the State and denying IMR and Richard Allen Schools' motion for summary judgment by finding that the Auditor's interpretation of the language of Section 3 of the Management Agreements entered between IMR and the Richard Allen Schools is the proper meaning of Section 3.

> [II.] The trial court erred in its determination that the Management Agreements were clear and unambiguous and, as such, failed to look to the intent and course of performance of the parties to the agreements in order to determine the meaning of Section 3 thereof.

{¶ 8} Because plaintiffs' assignments of error are interrelated, we will discuss them together. By both assignments of error, plaintiffs challenge the trial court's decision to grant defendants summary judgment. A trial court will grant summary judgment under Civ.R. 56 when the moving party demonstrates that: (1) there is no genuine issue of

---

[2] Initially, IMR sued the schools, along with the auditor of state and the attorney general. However, on defendants' motion, the schools were realigned as plaintiffs in the action.

material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, ¶ 29; *Sinnott v. Aqua-Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, ¶ 29. Appellate review of a trial court's ruling on a motion for summary judgment is de novo. *Hudson* at ¶ 29. This means that an appellate court conducts an independent review, without deference to the trial court's determination. *Zurz v. 770 W. Broad AGA, L.L.C.*, 192 Ohio App.3d 521, 2011-Ohio-832, ¶ 5 (10th Dist.); *White v. Westfall*, 183 Ohio App.3d 807, 2009-Ohio-4490, ¶ 6 (10th Dist.).

{¶ 9} Ultimately, the sole issue in this appeal is whether the trial court properly interpreted revised Section 3. When construing the terms of a contract, a court's principal objective is to give effect to the intent of the parties. *Transtar Elec., Inc. v. A.E.M. Elec. Servs. Corp.*, 140 Ohio St.3d 193, 2014-Ohio-3095, ¶ 9. A court presumes that the intent of the parties resides in the language that they used in the contract. *Martin Marietta Magnesia Specialties, L.L.C. v. Pub. Util. Comm.*, 129 Ohio St.3d 485, 2011-Ohio-4189, ¶ 22; *Holdeman v. Epperson*, 111 Ohio St.3d 551, 2006-Ohio-6209, ¶ 12. If a court is able to determine the intent of the parties from the plain language of the contract, then the court must apply the language as written and refrain from further contract interpretation. *Saunders v. Mortensen*, 101 Ohio St.3d 86, 2004-Ohio-24, ¶ 9.

{¶ 10} In the case at bar, the relevant contractual language required the schools to "pay to the [IMR] Eighty-seven percent (87%) of the remaining 90%" for a school expense fee. The "remaining 90%" refers to the 90 percent of total revenues left after the schools paid the 10 percent management fee. Thus, the unambiguous language of revised Section 3 required the schools to pay a school expense fee of 87 percent of the 90 percent of total revenues that remained in the schools' possession after payment of the 10 percent management fee.

{¶ 11} Plaintiffs interpret revised Section 3 as if it required the schools to pay IMR a school expense fee equal to 87 percent of *all*, i.e., 100 percent, of the total revenues. To support their interpretation of the relevant contractual language, plaintiffs rely on affidavit testimony of an IMR board member and the president of the schools' governing

authority. Plaintiffs also adduce affidavit testimony from an expert witness in school finance, who states that he interprets revised Section 3 as plaintiffs do. Because revised Section 3 is unambiguous, we cannot consider any of this evidence.

{¶ 12} If contractual language is unambiguous, a court can look no further than the writing itself to find the intent of the parties. *Transtar Elec., Inc.* at ¶ 9. A contract is unambiguous if a court can give it a definite legal meaning. *Martin Marietta Magnesia Specialties, L.L.C.* at ¶ 22. Consequently, where a court can identify a definite legal meaning in the contractual language, the court cannot give the contract a construction other than that which the plain language of the contract provides. *Id.* Moreover, parties may not introduce extrinsic evidence to show an agreement that is materially different from the agreement expressed by the unambiguous contractual language. *Id.* In the case at bar, revised Section 3 has a definite legal meaning, so plaintiffs cannot vary that meaning with extrinsic evidence.

{¶ 13} Plaintiffs also argue that the trial court erroneously substituted defendants' interpretation of revised Section 3 for their interpretation. Plaintiffs contend that defendants are strangers to the contract and, thus, could not know what the parties to the contract intended. This argument ignores the applicable law. As we stated above, a court presumes that the words of the contract express the parties' intent. *Id.* at ¶ 22; *Holdeman*, 111 Ohio St.3d 551, 2006-Ohio-6209, at ¶ 12. While plaintiffs now attempt to escape the plain language of revised Section 3, that section unambiguously states that the schools owe IMR a school expense fee of 87 percent of the remaining 90 percent of total revenues, not 87 percent of 100 percent of total revenues.[3] Because the trial court did not misinterpret that clear, unambiguous language, the trial court did not err in determining the intent of the parties to the contract.

{¶ 14} Finally, plaintiffs argue that we should not interpret the words of revised Section 3 according to their ordinary meanings because manifest absurdity results.

---

[3] Plaintiffs potentially had a recourse to correct revised Section 3 so that it reflected the parties' true intent. "Reformation is available where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties." *Wagner v. Natl. Fire Ins. Co.*, 132 Ohio St. 405, 412 (1937); *accord Madeira Crossing, Ltd. v. Milgo Madeira Properties, Ltd.*, 1st Dist. No. C-130524, 2014-Ohio-4179, ¶ 25. Plaintiffs, however, did not seek reformation of their contracts. Therefore, we express no opinion regarding whether plaintiffs could have succeeded in an action seeking a reformation that related back to the date of Section 3's revision.

Plaintiffs did not raise this argument in the trial court, and therefore, they have waived it on appeal. *See Niskanen v. Giant Eagle, Inc.*, 122 Ohio St.3d 486, 2009-Ohio-3626, ¶ 34 (holding that a party who fails to raise an argument in the court below waives his or her right to raise the argument on appeal). Moreover, plaintiffs' argument fails on its merits. Plaintiffs do not indicate which words, once invested with a special meaning, could possibly give Section 3 the connotation plaintiffs give it. Essentially, to prevail on this argument, plaintiffs would have to establish that "Eighty-seven percent (87%) *of the remaining 90%*" really means "Eighty-seven percent (87%) *of 100%.*" Adoption of plaintiffs' argument would entail a blatant redrafting of their contract, which in these circumstances, we cannot do. *Holdeman* at ¶ 12, quoting *Shifrin v. Forest City Ents., Inc.*, 64 Ohio St.3d 635, 638 (1992) ("[W]hen 'the terms in a contract are unambiguous, courts will not in effect create a new contract by finding an intent not expressed in the clear language employed by the parties.' ").

{¶ 15} For the foregoing reasons, we overrule plaintiffs' two assignments of error, and we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

SADLER and BRUNNER, JJ., concur.