OPINION
{¶ 1} Herbert K. and Barbara Warmuth ("the Warmuths") appeal from a judgment of the Lake County Common Pleas Court in favor of Frank Sailors in connection with the sale of the Warmuths' house, time shares, and a boat to Dr. Sailors. For the following reasons, we affirm.
 {¶ 2} Substantive Facts and Procedural History *Page 2 
 {¶ 3} The instant controversy arose from the sale of the Warmuths' house to Dr. Sailors in 2004 and the dispute concerned whether the bargain negotiated between the parties included two time shares and a boat owned by the Warmuths.
 {¶ 4} The record reflects the Warmuths were owners of two time shares in La Vista resort in Saint Maarten, Netherlands Antilles. Specifically, they were lessees of certain premises under two lease agreements with La Vista resort; each lease allowed them to use the premises one week per year in the resort.
 {¶ 5} In June 2004, the Warmuths negotiated with Dr. Sailors, who was Mr. Warmuth's physician many years prior, to sell their house on the lake in Perry, Ohio to Dr. Sailors and his sister, Ann Sailors, a non-party in this case. During the negotiations, the Warmuths and Dr. Sailors also discussed a sale of the Warmuths' time shares and a Lyman boat to Dr. Sailors. An agreement of a price of $310,000 was eventually reached. They closed the sale of the house in September 2004.
 {¶ 6} The transfer of the time shares did not occur until early 2006. On February 2, 2006, Mr. Warmuth signed a bill of sale of the time shares to Dr. Sailors.
 {¶ 7} The parties' dispute concerns whether the amount of $310,000 paid by Dr. Sailors in 2004 included payment for the time shares and the boat. The Warmuths claim the sum was for the house only. Dr. Sailors asserts the sum included the house, the time shares, and the boat. The trial court, following a bench trial, found the bargain between the parties in 2004 to include all three items.
 {¶ 8} On June 6, 2006, Mr. Warmuth filed a complaint against Dr. Sailors, styled as "Complaint for Reformation or Rescission of Contract and for Unjust Enrichment." Mr. Warmuth alleged that, on or about February 2, 2006, he and Dr. Sailors discussed *Page 3 
the sale of the time shares, and he agreed to sell them for the price of $5,000 per week plus $500 maintenance fees per week, totaling $11,000 for the two time shares. He alleged that although the parties signed a bill of sale on February 2, 2006, for the time shares, which indicated a consideration of $1,000, that amount was not what the parties had agreed to. He alleged Dr. Sailors "either mistakenly or by fraudulent misconduct only described $1,000 on said bill of sale" and that Dr. Sailors "fraudulently induced [him] to enter into the written bill of sale."
 {¶ 9} Mr. Warmuth further alleged that the bill of sale did not properly convey a real estate interest because the notarization of the bill of sale was improper and incorrect, "in violation of R.C. 5300 [sic]."
 {¶ 10} Mr. Warmuth sought a reformation of the bill of sale "to show the actual intent and agreement of the parties," or a rescission of the bill of sale. In the alternative, he asked the court to award sums to compensate him for Dr. Sailors' unjust enrichment in the use of the time shares.
 {¶ 11} Dr. Sailors filed a motion for judgment on the pleadings pursuant to Civ. R. 12(C), on the ground that the oral agreement alleged by Mr. Warmuth regarding the sale of the time shares for $11,000 cannot be enforced, because any grant of interest in land must be in writing pursuant to the Statute of Frauds. Alternatively, Dr. Sailors argued that, even if the sale of the time shares was not a transfer of an interest in land, the alleged oral contract was still unenforceable because the agreement involved a sale of property in excess of $5,000 and therefore must be in writing pursuant to R.C. 1301.12. *Page 4 
 {¶ 12} In his response to Dr. Sailors' motion for judgment on the pleadings, Mr. Warmuth stated: "Defendant did not act with a fraudulent purpose in putting in the $1,000.00 as consideration." (Emphasis added.) He stated that, instead, "one of the parties, through mistake, inadvertence, did not express the original actual intent of the parties." He contended the trial court should reform the bill of sale so as to "correct what was the intent of the parties immediately prior to the signing of the agreement."
 {¶ 13} On November 16, 2006, the trial court denied Dr. Sailors' motion for judgment on the pleadings and also granted Mr. Warmuth's oral motion for leave to amend his complaint.
 {¶ 14} Subsequently, on December 15, 2006, the Warmuths filed an amended complaint, naming as defendants Dr. Sailors and La Vista.[1]
 {¶ 15} Count one of the amended complaint sought a declaratory judgment pursuant to R.C. 2121.01 [sic][2], et. eq. and Civ. R. 57. They asked the trial court to declare that the bill of sale did not "act as a transfer of [the Warmuths'] real property interest created through the terms and conditions of the two lease agreements." They alleged that some time prior to February 2, 2006, Mr. Warmuth and Dr. Sailors had a discussion regarding the time shares. Mr. Warmuth alleged that he understood the sum of $1,000 indicated in the bill of sale to be either a down payment for a purchase of the *Page 5 
time shares or the cost for the use of the premises for 2006. The Warmuths asked the court to order the property interest specified in the lease agreements to be transferred back to the Warmuths. Alternatively, the Warmuths asked for a judgment in the amount of $11,000.
 {¶ 16} Count two of the amended complaint alleged Dr. Sailors used the time shares for two weeks in 2006 without paying the Warmuths any compensation for the use or maintenance fees for the year.
 {¶ 17} In his counterclaim, Dr. Sailors alleged that the value of the house was between $290,000 and $295,000 and that he and his sister agreed to pay the Warmuths $310,000 because they had agreed to also convey to him the time shares and a Lyman boat valued at $5,000, which was still in the Warmuths' possession at the time of this lawsuit.
 {¶ 18} At the bench trial on August 29, 2007,[3] Mr. Warmuth testified that during the negotiation for the sale of the house in 2004 he also discussed with Dr. Sailors the sale of the time shares and the boat. He testified, however, that the amount of $310,000 was for their house only and that they had a verbal agreement at that time to sell their time shares for $10,000 plus $1,000 for maintenances fees.
 {¶ 19} He admitted that on February 2, 2006, he signed a bill of sale for the time shares, knowing it indicated a consideration of $1,000. Asked why he signed the bill of *Page 6 
sale, he replied that "the resort didn't need to know how much we were selling it for" and that "I trusted [Mr. Sailors]. We were good friends." Mrs. Warmuth also testified. She stated she never thought the amount of $310,000 included the time shares or the boat.
 {¶ 20} Dr. Sailors testified that in May or June of 2004, he was negotiating to buy the Warmuths' house. He testified he had asked a real estate agent for the value of the Warmuths' house and was told it should be worth about "two ninety," and therefore he "had a pretty good idea of what [he] was thinking [regarding the value of the house]." At the same time the Warmuths mentioned to him they also had some time shares and a boat to sell. He testified that on June 28, 2004, they agreed on $5,000 for the time shares and $1,000 for the boat and he agreed to pay a total of $310,000 for everything. He testified that Mrs. Warmuth was present on this occasion and Mr. Warmuth "turned to her and said, `Honey, Dr. Sailors is offering us three ten for the house, the timeshare and the boat.'"
 {¶ 21} Dr. Sailors testified that at the June 28, 2004 meeting, he jotted down various numbers on a piece of paper, circled the figure $310,000, signed his name to it, and gave the paper to the Warmuths to keep as a guarantee. He further testified that he brought a bill of sale for the time shares for Mr. Warmuth to sign in February 2006. They agreed to put down the amount of $1,000 in the bill of sale and had the document notarized. Dr. Sailors testified that a few days after the bill was signed, he tried to pay Mr. Warmuth $1,000 for the maintenance fee Mr. Warmuth had paid for the previous year; Mr. Warmuth, however, demanded a payment of $11,000.
 {¶ 22} The exhibits in this case include the bill of sale dated February 2, 2006, which was signed by Mr. Warmuth and notarized. It indicates a consideration of $1,000 *Page 7 
for the sale of the two time shares. Mr. Warmuth wrote on it "New Owner" next to "Frank Sailors." Neither party introduced the deed or the purchase agreement of the house into evidence.
 {¶ 23} The exhibits also contain a note handwritten by Dr. Sailors dated June 28, 2004. The note shows several figures. It shows a figure of $310,000, which was circled. It also shows a figure of $5,000 with the words "time share" next to it, and a figure of $1,000 with the word "boat" next to it. In addition, it shows a figure of $218,000, with the word "D'Abata" next to it. Dr. Sailors testified that D'Abata was the owner of the house the Warmuths planned to purchase in conjunction with selling their house, and that $218,000 was the amount needed to pay D'Abata for his house. The note also shows a figure of $224,000, which apparently was arrived at by adding $5,000 for the time shares and $1,000 for the boat to $218,000, the funds needed for the D'Abata house. The note furthermore reflects the following calculation: "$310,000-$224,000 = $86,000". Next to the figure of $86,000 are the words "when moving out." In connection with this note, Dr. Sailors testified he was going to pay an initial amount of $224,000 and pay $86,000 when the Warmuths moved out. Eventually he paid the Warmuths $310,000 all at once. In the note, the figures of $310,000 and $224,000 were circled and it shows Dr. Sailors' signature at two different places.
 {¶ 24} In its judgment entry dated October 30, 2007, the trial court resolved the conflict in the parties' testimony regarding whether the amount of $310,000 included the sale of the time shares in Dr. Sailors' favor.
 {¶ 25} In particular, the court found the handwritten note crucially corroborated Dr. Sailors' testimony as to the agreement of the parties preceding the sale of the house *Page 8 
in September of 2004. The trial court found that on June 28, 2004, an agreement was reached among the parties for Dr. Sailors to pay the Warmuths a total of $310,000 to purchase their house, boat, and La Vista time shares.
 {¶ 26} In its judgment entry, the court determined that although the Warmuths sought "declaratory relief," they in effect asked the court for a reformation of the bill of sale. The court explained that a reformation of contract requires a demonstration by clear and convincing evidence of a mutual mistake. Because the Warmuths failed to demonstrate any such mutual mistake existed, they were not entitled to relief.
 {¶ 27} As to Dr. Sailors' counterclaim for the boat, the court ordered the Warmuths to transfer its title to Dr. Sailors or pay him $5,000 for the value of the boat.
 {¶ 28} The Warmuths timely filed the instant appeal, raising two assignments of error for our review:
 {¶ 29} "[1.] In light of the Appellee's conduct in crafting the bill of sale, the Appellee committed a constructive fraud against the Appellants.
 {¶ 30} "[2.] The Trial Court improperly granted judgment to the Appellee based on insufficiency of evidence."
 {¶ 31} Standard of Review
 {¶ 32} In a civil proceeding, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." C. E. Morris Co. v. Foley Constr.Co. (1978), 54 Ohio St.2d 279, 280-281 (citations omitted).
 {¶ 33} Furthermore, an appellate court will not disturb the trial court's findings of fact if the record contains competent, credible evidence to support such findings. *Page 9 Stevenson v. Bernard, 11th Dist. No. 2006-L-096, 2007-Ohio-3192, at ¶ 38. The underlying rationale in giving deference to the trial court's findings of fact is that the trial court "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." State, ex rel. Pizza v. Strope (1990), 54 Ohio St.3d 41, 46. See, also, Omerza v. Bryant Stratton, 11th Dist. No. 2006-L-092,2007-Ohio-5215, ¶ 12.
 {¶ 34} The Appellants Raise the Claim of Constructive Fraud For theFirst Time on Appeal
 {¶ 35} In their first assignment error, the Warmuths contend Dr. Sailors committed a constructive fraud for his conduct relating to the bill of sale.
 {¶ 36} It is a well established rule of appellate review that a court will not consider issues that an appellant fails to raise initially at the trial court. See Lippy v. Society Natl. Bank (1993),88 Ohio App.3d 33, 40 (appellant cannot raise an argument on appeal for the first time when there was no indication that the argument was brought to the trial court's attention and considered below); MKB Leasing Corp. v.Sagowitz, 4th Dist. No. 02CA3, 2002-Ohio-5749, 2002 Ohio App. LEXIS 5640, *10; Alco Indus. v. Cleveland Micro Sys. (July 2, 1997), 5th Dist. No. 1996CA00376, 1997 Ohio App. LEXIS 3219, *9; McKenzie v.Spangler (May 9, 1997), 6th Dist. No. L-96-236, 1997 Ohio App. LEXIS 1843 (an issue is not ripe for appellate review unless it was presented to the trial court and the court made a definitive ruling on the issue).
 {¶ 37} "The well-settled rule which requires the parties to adhere on appeal to the theory upon which they presented the case in the trial court, operates to limit the scope of the review * * * the case, on appeal, must be reviewed and decided on the theory on *Page 10 
which it was tried in the court below." Webb v. Grimm (1961),116 Ohio App. 63, 74, quoting 3 American Jurisprudence, 372, Section 830.
 {¶ 38} The record reflects that the Warmuths attempted various legal theories in seeking remedy in this case. In their initial complaint, the Warmuths sought (1) reformation of the bill of sale or, in the alternative, rescission, and (2) relief based on unjust enrichment. In their amended complaint, they asked the court instead for a declaratory judgment that the bill of sale did not "act as a transfer of [the Warmuths'] real property interest" in the time shares. A review of the amended complaint shows that they based the claim for declaratory relief on an allegation that Mr. Warmuth signed the bill of sale under a mistaken belief that the sum of $1,000 indicated it was "either a down payment or the cost for the use of the premises for 2006." The court tried the case upon the amended complaint and construed the "declaratory relief" sought by the Warmuths as a request to reform the contract, which the court denied because there did not exist clear and convincing evidence to show a mutual mistake by the parties regarding the bill of sale.
 {¶ 39} On appeal, the Warmuths do not challenge that finding by the trial court, but instead ask us to address whether Dr. Sailors committed constructive fraud in this case. We note constructive fraud is defined as "a breach of a legal or equitable duty, which, irrespective of moral guilt of the fraud feasor, the law declares fraudulent, because of its tendency to deceive others, to violate public or private confidence, or to injure public interests." Cohen v. Estate of Cohen (1986),23 Ohio St.3d 90, 91 (citations omitted). Because the claim of constructive fraud was neither raised at trial nor considered by the court, we cannot address it on appeal. *Page 11 
 {¶ 40} We agree with the trial court that although the Warmuths framed their claim as one for declaratory relief, it essentially asked the court to reform the contract. We recognize judicial reformation of a contract is available "where it is shown that the written instrument does not express the true agreement entered into between the contracting parties by reason of a mistake common to them; in such a case equity affords the restorative remedy of reformation in order to make the writing conform to the real intention of the parties." Wagner v.National Fire Ins. Co. (1937), 132 Ohio St. 405, 412. Reformation is available, however, only when the mutual mistake is shown by clear and convincing evidence. Id. at 413, citing Stewart v. Gordon (1899),60 Ohio St. 170. Because the Warmuths do not challenge the trial court's finding that they failed to demonstrate by clear and convincing evidence that a mutual mistake existed regarding the bill of sale, we need not review it.
 {¶ 41} The first assignment of error is overruled.
 {¶ 42} Defenses Based on the Statute of Limitations or the MergerDoctrine Cannot be Raised the First Time on Appeal.
 {¶ 43} The Warmuths' second assignment of error states that "[t]he trial court improperly granted judgment to the Appellee based on insufficiency of evidence." They frame the issue to be reviewed as: "Did the real estate contract to purchase real estate in 2004 merge and thus preclude any claim for monies for the Lyman boat?"
 {¶ 44} They contend Dr. Sailors' counterclaim for the boat is barred by both the Statute of Frauds (R.C. 1335.05) and the merger doctrine, because no written contract for the 2004 agreement existed and "[a]ny real estate contract and the consummation thereof was merged into the deed of title transfer." *Page 12 
 {¶ 45} The merger doctrine states that "[w]here a deed is delivered and accepted without qualification pursuant to a contract to purchase, the contract to purchase merges with the deed, and no cause of action can be founded on the contract to purchase." Dillahunty v. KeystoneSavings Association (1973), 36 Ohio App.2d 135.
 {¶ 46} R.C. 1335.05, Ohio's general Statute of Frauds provision, states, in part:
 {¶ 47} "No action shall be brought whereby to charge the defendant * * * upon an agreement that is not to be performed within one year from the making thereof; unless the agreement upon which such action is brought, or some memorandum or note thereof, is in writing and signed by the party to be charged therewith or some other person thereunto by him or her lawfully authorized."
 {¶ 48} Our review of the record indicates that the Warmuths raised the defense of the Statute of Frauds but not the merger doctrine in their answer to Dr. Sailors' counterclaim regarding the boat.
 {¶ 49} However, neither the deed of the house nor the purchase agreement for the sale of the house was offered by the Warmuths as evidence at trial. Furthermore, because the trial transcript omitted counsel's opening statements and closing arguments pursuant to appellants' request, it is difficult for this court to ascertain from the transcript whether these defenses regarding the counterclaim were ever raised at trial. We note, however, the trial court made no mention of these defenses in its judgment entry when it concluded the transaction for the amount of $310,000 in 2004 included the house, the time shares, and the boat.[4] Because the arguments based on *Page 13 
either the Statute of Frauds or the merger doctrine do not affirmatively appear in the record, we have no indication that these arguments were ever brought to the trial court's attention or considered below. And, even if they were raised, the trial court would not have sufficient evidence to evaluate them because neither the deed nor the purchase agreement was introduced as evidence. Consequently, we cannot address the merit of these arguments on appeal.
 {¶ 50} The Warmuths' second assignment is overruled.
 {¶ 51} The trial court in this case was confronted with conflicting testimony from the parties as to the nature of the bargain in their 2004 transaction. The court resolved the conflict by finding the June 28, 2004 handwritten note to provide an independent support for Dr. Sailors' testimony that the bargain included the sale of the time shares and the boat. This finding is supported by competent, credible evidence in the record and we will not disturb it.
 {¶ 52} For all the foregoing reasons, we affirm the judgment of the Lake County Common Pleas Court.
DIANE V. GRENDELL, P.J., CYNTHIA WESTCOTT RICE, J., concur.
[1] The Warmuths attached two lease agreements between themselves and La Vista. They stated they were "the Lessees of the property under the terms and conditions of two Lease Agreements with the Defendant, La Vista". They further stated, "the lease of the premises is in the form of a `time share' in which [the Warmuths] are entitled to the use of the premises for a period of two weeks per year, conditioned upon the payment of the fees associated with the maintenance and taxes in the approximated sum of $500.00 per year per week of the terms and conditions and payment, for a total of $1,000 until the year 2090."
[2] The Warmuths miscited the statute in the complaint. Chapter 2721
of the Revised Code, not 2121, sets forth provisions for declaratory judgments. In particular, section 2721.04 states that, "subject to division (B) of section 2721.02 of the Revised Code, a contract may be construed by a declaratory judgment or decree either before or after there has been a breach of the contract."
[3] We note that the trial transcript contains neither the opening statement nor the closing argument portion of the trial. The transcript begins with the testimony of the first witness, Mr. Warmuth, with the notation: "Transcription of the preceding portion of the proceedings was not requested and is therefore not included herein." After the testimony of the last witness, Dr. Sailors, the transcript ends with the notation: "The portion of the proceedings which follows was not requested to be transcribed and is therefore not included herein." We point out here that an appellant bears the burden of demonstrating error by reference to the record of the proceedings below, and therefore it is the appellant's duty to provide the reviewing court with an adequate transcript. App. R. 9(B); Burrell v. Kassicieh (1998),128 Ohio App.3d 226, 232, citing Knapp v. Edwards Laboratories (1980),61 Ohio St.2d 197, 199.
[4] The trial court's judgment entry however indicates the courtdid consider the application of the parole evidence rule but found that the evidence was insufficient to a defense based on this theory. "The parole evidence rule states that `absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.'"Galmish v. Cicchini (2000), 90 Ohio St.3d 22, 27, citing 11 Williston on Contracts (4 Ed. 1999) 569-570, Section 33:4. *Page 1