[Cite as *Payette Fin., Servs., L.L.C. v. Mtge. Electronic Registration Sys., Inc.*, 2020-Ohio-5055.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

| | | |
|---|---|---|
| PAYETTE FINANCIAL SERVICES, LLC, | : | **O P I N I O N** |
| Plaintiff, | : | **CASE NO. 2020-P-0010** |
| - vs - | : | |
| MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., ACTING SOLELY AS NOMINEE FOR MB FINANCIAL BANK, N.A., et al., | : | |
| | : | |
| | : | |
| Defendants-Third Party Plaintiffs-Appellants/ Cross-Appellees, | : | |
| | : | |
| DAVID GRAY, et al., | : | |
| | : | |
| Third Party Defendants- Appellees/Cross-Appellants. | : | |

Civil Appeal from the Portage County Court of Common Pleas, Case No. 2016 CV 00969.

Judgment: Affirmed.

*Kerin Lyn Kaminski* and *Kathleen A. Nitschke,* Giffen & Kaminski, LLC, 1300 East Ninth Street, Suite 1600, Cleveland, Ohio 44114 (For Defendants-Third Party Plaintiffs-Appellants/Cross-Appellees).

*Jeffrey Mark Levinson*, Levinson LLP, 55 Public Square, Suite 1750, Cleveland, Ohio 44113 (For Third Party Defendants-Appellees/Cross-Appellants).

MARY JANE TRAPP, J.

{¶1} Cross-appellants, David and Shelly Gray (collectively, "the Grays"), appeal from the judgments of the Portage County Court of Common Pleas, which adopted the magistrate's decision and overruled their objections, finding that while the Grays asserted a "vague" affirmative defense of release in their answer to the Third Party Complaint, they did not assert a "counterclaim of any kind" that "meets the requirements of the Ohio Rules of Civil Procedure as a properly pleaded claim for damages" for breach of contract.

{¶2} In the Grays' sole assignment of error, they argue that the trial court erred in failing to find that they asserted a valid breach of contract claim via an affirmative defense because the cross-appellees, Douglas and Kristine Ritzel (collectively, "the Ritzels"), commenced and prosecuted third party claims against them in direct contravention of the parties' earlier mutual release, thus entitling the Grays to damages. They further assert the trial court erred in failing to find the issue was tried by implied consent pursuant to Civ.R. 15(B) after the Ritzels made a motion to amend their pleadings to conform to the evidence.

{¶3} A review of the record and pertinent law reveals the Grays only asserted a breach of the mutual release as an affirmative defense and did not file a counterclaim or a motion for leave to amend. There is sparse testimony by Mr. Gray regarding the costs they incurred from the underlying litigation as a result of the alleged breach. Further, objections were made to this line of questioning, which were sustained. Moreover, to find a breach of contract claim was impliedly tried by consent would cause a substantial prejudice to the Ritzels.

{¶4} Thus, the judgment of the Portage County Court of Common Pleas is affirmed.

**Substantive and Procedural Facts**

{¶5} This case arises from a foreclosure action in which the Ritzels were the defendants/third-party plaintiffs along with their lender and co-defendant/third-party plaintiff, MB Financial Bank, N.A. ("MBFinancial"), and the Grays were third-party defendants.

{¶6} In 2011, the Ritzels entered into a lease with an option to purchase with the Grays for the subject residential property. In 2015, the Ritzels signed a purchase agreement for the property. At the time the purchase agreement was executed, three mortgages encumbered the property – two held by Wells Fargo and a third originally held by Lake National Bank. It was alleged that Payette Financial Services, LLC ("Payette") subsequently acquired a participation interest in that third note and mortgage (the "Payette mortgage").

{¶7} At closing, the Wells Fargo liens were satisfied from the sale proceeds funded by MBFinancial. Neither the Ritzels nor MBFinancial discovered, nor did the Grays disclose, the third mortgage prior to the closing of the sale of the property

{¶8} To further complicate matters, after the purchase agreement was executed, but before closing, the relationship between the Ritzels and the Grays grew tumultuous – culminating in the Grays filing an eviction action. The Grays alleged non-payment of amounts due under the lease agreement, and the Ritzels filed a counterclaim for specific performance and money damages. The parties eventually signed a confidential settlement agreement and mutual release – the subject of this appeal – and dismissed the eviction action.

{¶9} The Ritzels then completed the purchase, and the Grays delivered a general warranty deed. Later, having been unable to collect against the Grays, Payette brought its foreclosure action, asserting its lien against the Ritzels' residence as first in priority when it discovered the property had been sold to the Ritzels.

{¶10} In the foreclosure action, MBFinancial and the Ritzels filed amended third-party claims against the Grays for breach of warranty deed, fraudulent misrepresentation, and unjust enrichment. In turn, the Grays filed an amended answer denying the allegations and raising various affirmative defenses, including a defense that "the claims against the Grays contained in the Third-Party Complaint were released." In their prayer for relief, the Grays requested the court to "enter judgment in favor of the Grays on the Third-Party Complaint as to each and every Count therein, assessing any costs of this litigation against the Defendants and grant the Grays such further and additional relief as is just." There were no further amendments to the pleadings.

{¶11} After a lengthy discovery phase, which included, by the parties' stipulation, the filing of the mutual release from the eviction action into the record of the foreclosure action, a three-day trial was held before a magistrate.

### Trial Testimony and the Grays' Claims

{¶12} Counsel for the Grays concluded his opening statement by stating: "At the end of this case, the Grays, who are the parties least able to afford this expense, will ask the Court for an award that the Defendants pay the costs the Grays incurred in this meritless litigation due to their breach of the contract of the mutual release."

{¶13} Mr. Gray testified briefly as to the mutual release:

4

{¶14} "Q. So once you saw this mutual release in the closing documents, did you expect to be done with the Ritzels forever?

{¶15} "A. Absolutely.

{¶16} "Q. Did you think we would be here today?

{¶17} "A. No.

{¶18} "Q. Would you please read aloud the mutual release paragraph of this document found on Page 2 at 1.0, starting with mutual releases?

{¶19} "A. Mutual releases. Each party, including their respective families, assignees, agents, heirs, beneficiaries, fiduciaries, representatives, insurers, successors, and assigns, exchange for the other party's promises and covenants and for all other good and valuable consideration, the sufficiency of which are acknowledged, irrevocably and non-conditionally release, acquits, and forever discharges the other party from any and all claims, demands, costs, expenses, and cause of action of any kind or description whatsoever whether known or unknown, vested or contingent, legal or equitable, that each has or might have against the other relating to or arising out of subject matter of litigation to lease the purchase agreement, from the beginning of time until the date the agreement is fully executed.

{¶20} "Q. It's pretty comprehensive; isn't it?

{¶21} "A. Yes.

{¶22} "Q. There are no exceptions to the mutual promise of finality there that I can see; do you?

{¶23} "A. I think it all says it right there.

{¶24} "Q. It covers all claims?

5

{¶25} "A. Yes.

{¶26} "Q. Known or unknown?

{¶27} "A. Correct.

{¶28} "Q. It doesn't say anywhere except for any type of claims; does it?

{¶29} "A. No, it does not.

{¶30} "Q. All is all; right?

{¶31} "A. Correct.

{¶32} "Q. Unknown is unknown; right?

{¶33} "A. Yes.

{¶34} "Q. And yet in plain breach of that mutual promise of finality, we're here now; right?

{¶35} "[Counsel for MBFinancial/the Ritzels]: Objection. Just leading all the way through, but I got tired of objecting, but that's just –

{¶36} "The Magistrate: Sustained.

{¶37} "[Counsel for the Grays]: Okay.

{¶38} "Q. So it would be a legitimate question to ask why we're here now in light of this release?

{¶39} "A. Yes.

{¶40} "Q. Can you tell me how?

{¶41} "A. It's been ongoing for two years now. Emotionally, it's like a big, black cloud hanging over us. Financially, up to this trial it's cost us $35,000.00 to deal with this. It's caused a lot of friction and undue distress on us as a family.

{¶42} "Q. Can you describe generally what the financial costs – or I'm sorry, give me general categories of what the financial cost to you consists of?

{¶43} "A. Missed work. I've had to miss obviously these last three days. I missed a day for the deposition, hotel costs, flight costs, attorney fees.

{¶44} "Q. Did you also have to buy transcripts?

{¶45} "A. Yes. We had to buy transcripts. I think that's – covers it.

{¶46} "Q. All expenses incurred because of the Ritzels' breach of the mutual release; correct?

{¶47} "[Counsel for MBFinancial/the Ritzels]: Objection.

{¶48} "The Magistrate: Sustained."

{¶49} Toward the end of trial after the court ruled on admission of evidence, MBFinancial and the Ritzels moved to amend the pleadings to conform to the admitted evidence. The Grays did not object. Payette moved for a directed verdict, which was overruled. At that point, Payette indicated to the court that it had no rebuttal and that it would "like to make a similar motion to conform." The magistrate responded that "the motion to have it conform to the evidence has already been put on by the Defendants [MBFinancial and Ritzels], so its conforming how it conforms. Okay." Payette's counsel replied, "Okay," and the Grays' counsel said, "Prospectively as well." The magistrate responded, "All right. So that will be granted for all parties * * *."

{¶50} During closing arguments, both sides spoke briefly about the mutual release. The Grays contended that the Ritzels had released all claims relating to the purchase agreement in the mutual release and asked the court for "judgment in their favor on each of the Defendant's claims and also an award of the costs they incurred in this

7

litigation on account of the Defendant's clear breach of contract by proceeding in the face of the mutual release, which again, they hid."

{¶51} In rebuttal, counsel for MBFinancial and the Ritzels stated that "Mr. Gray's counsel brought up that they should be able to get fees based on breach of contract, and I think he means breach of the purchase agreement although I'm not quite sure. And so to the extent that that's what he is indeed seeking, I would then say that such fees can't be recovered, because there's no contract to be breached. The purchase agreement merged into the warranty deed, and so, therefore, there's no way to enforce the purchase agreement at this point."

{¶52} The magistrate issued her decision, finding, in relevant part that: the Ritzels and the Grays entered into and executed a purchase agreement offer, receipt and acceptance for the property, which was subsequently amended six times; the Grays signed a seller pre-closing information form that did not disclose the Payette mortgage on the property; the Grays and the Ritzels were having various disputes that culminated in February of 2016 when the Grays filed an eviction action against the Ritzels; however, the parties decided to proceed with a sale of the property and executed a purchase agreement for the property in April of 2016; and the Grays signed an owner's affidavit and closing disclosure statements in connection with the sale of the property, none of which disclosed the Payette mortgage.

{¶53} The magistrate further found that the Grays then signed the ALTA Settlement Statement showing payments to Wells Fargo and a Closing Disclosure that failed to disclose the third mortgage. The magistrate found that on the same date, the

8

Grays and the Ritzels "executed a Confidential Settlement Agreement and Mutual Release, which resolved the eviction litigation between them."

{¶54} The magistrate continued her findings by noting that pursuant to the Mutual Release, the Grays and the Ritzels "released, acquitted and forever discharged any and all claims, whether known or unknown, vested or contingent, legal or equitable, that each party had or might have against the other relating to or arising out of the subject matters of the eviction action, the Lease Agreement, or the Purchase Agreement, from the beginning of time until the date the Mutual Release was fully executed on May 24, 2016. On May 24, 2016, the Grays executed a General Warranty Deed in favor of the Ritzels."

{¶55} The magistrate also found that "MB Financial did not rely upon the Grays' Owners Affidavit regarding the condition of the title to the Property, but relied upon the defective title exam and title commitments. No evidence was presented that the Ritzels justifiably relied upon any misrepresented statements by the Grays to induce reliance in the purchase of the Property. No evidence was presented that the Grays intended to mislead any party."

{¶56} The magistrate then ordered, as is pertinent to this appeal, that (1) "the Grays were granted judgment against MB Financial on each of their claims"; (2) the Ritzels were "granted judgment on their claim against Third-Party Defendants, Shelly Gray and David Gray, for breach of warranty deed"; (3) the Grays were "granted judgment against Third-Party Plaintiffs, Douglas Ritzel and Kristine Ritzel, on the remainder of Third-Party Plaintiffs' claims."

{¶57} Upon review, the trial court adopted the magistrate's decision without modifications. MBFinancial, the Ritzels, and the Grays subsequently filed objections. In

9

their objections, the Grays argued they were entitled to a judgment in their favor and against the Ritzels and MBFinancial for breach of contract and to a hearing to determine damages incurred by the Grays as a result of the breach.

{¶58} Based upon the court's review of the pleadings, the trial transcript, the various stipulations between the parties, the exhibits admitted into evidence, the objections asserted by the parties, and the arguments submitted in opposition to the objections, the court found the objections not well-taken.

{¶59} More specifically, the court found that the Grays asserted in their objections that MBFinancial and the Ritzels violated a Confidential Settlement Agreement and Mutual Release in conjunction with an unrelated eviction action. They further argued that the magistrate's decision found "all of the requisite elements of the Grays' breach of contract claim."

{¶60} Upon review of the pleadings, the court found that the Grays did not file any claim at any time against MBFinancial or the Ritzels for breach of contract or any other claim for relief. In their amended answer, the Grays did assert an affirmative defense that "[t]he claims against the Grays contained in the Third-Party Complaint were released" and requested that the court "grant the Grays such further and additional relief as is just."

{¶61} The court concluded that "while the Grays may have asserted a valid (but vague) affirmative defense, they clearly did not assert a viable claim that meets the requirements of the Ohio Rules of Civil Procedure as a properly pleaded claim for damages."

{¶62} The instant appeal followed, with MBFinancial, the Ritzels, and the Grays all filing appeals of the trial court's judgments adopting the magistrate's decision and

10

overruling their respective objections. MBFinancial's and the Ritzels' appeal against Payette was subsequently dismissed.

{¶63} The Grays now raise one assignment of error on appeal:

{¶64} "The trial court erred as a matter of both fact and law in failing to find that the Grays properly asserted a valid breach of claim on account of the Ritzels' commencement and prosecution of the third-party claims against the Grays in violation of the Mutual Release, entitling the Grays to damages therefor."

## Standard of Review

{¶65} On appeal, a trial court's overruling of objections and adoption of a magistrate's decision will not be overruled unless the trial court abused its discretion. (Citations omitted.) *Davis v. J & J Concrete*, 11th Dist. Trumbull No. 2018-T-0074, 2019-Ohio-1407, ¶18. The term "abuse of discretion" is one of art, "connoting judgment exercised by a court which neither comports with reason, nor the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-78 (1925). Stated differently, an abuse of discretion is the trial court's "failure to exercise sound, reasonable, and legal decision-making." *State v. Beechler*, 2d Dist. Clark No. 09-CA-54, 2010-Ohio-1900, ¶62, quoting *Black Law's Dictionary* 11 (8th Ed.Rev.2004).

## Did the Grays Present a Claim for Relief?

{¶66} The Grays assert that the trial court erred in finding that they did not assert a breach of contract claim at trial because they established, without objection, all of the elements necessary to establish such a claim. They further contend that to find they did not assert a claim for breach of contract by way of a pleading ignores and is contrary to

11

the plain provisions of Civ.R. 15(B), which allows amendments of pleadings to conform to the evidence and trial of a claim not raised in the pleadings by implied consent. Thus, they assert that we should reverse for the trial court to hold a hearing on the issue of damages resulting from the Ritzels' breach.

{¶67} At the outset, we note that the Grays raise the second contention in their assignment of error (trial by implied consent) for the first time on appeal. This argument was not raised in the Grays' objections to the Magistrate's Decision. A party may not raise a claimed error on appeal unless that party has properly objected to that factual finding or legal conclusion in his or her objections to the magistrate's decision. Civ.R. 53(D)(3)(b)(iv); *Stauffer v. Stauffer*, 11th Dist. Geauga No. 2008-G-2860, 2009-Ohio-998, ¶21, citing *Loss v. Claxton,* 11th Dist. Portage No. 2003-P-0128, 2005-Ohio-347, ¶71.

{¶68} It is a well-established rule of appellate review that a court will not consider issues that an appellant fails to raise initially at the trial court. *Warmuth v. Sailors*, 11th Dist. Lake No. 2007-L-198, 2008-Ohio-3065, ¶36, citing *Lippy v. Society Natl. Bank*, 88 Ohio App.3d 33, 40 (11th Dist.1993) (appellant cannot raise an argument on appeal for the first time when there was no indication that the argument was brought to the trial court's attention and considered below); *MKB Leasing Corp. v. Sagowitz,* 4th Dist. Washington No. 02CA3, 2002-Ohio-5749, ¶24; *McKenzie v. Spangler*, 6th Dist. Lucas No. L-96-236, 1997 WL 243578, *2 (May 9, 1997) (an issue is not ripe for appellate review unless it was presented to the trial court and the court made a definitive ruling on the issue).

{¶69} "The well-settled rule which requires the parties to adhere on appeal to the theory upon which they presented the case in the trial court, operates to limit the scope

12

of the review * * * the case, on appeal, must be reviewed and decided on the theory on which it was tried in the court below * * *." *Webb v. Grimm*, 116 Ohio App. 63, 74 (2d Dist.1961), quoting 3 American Jurisprudence, Section 830, at 372.

{¶70} Moreover, the Grays failed to support their claimed error with arguments and failed to cite any legal authority as required by App.R. 16(A)(7) and Loc.R. 16(C)(4). An appellant's brief must include argument and law, "containing the contentions of appellant with respect to each assignment of error presented for review * * *, with citations to the authorities, statutes, and parts of the record on which appellant relies." *S. Russell v. Upchurch*, 11th Dist. Geauga Nos. 2001-G-2395 & 2001-G-2396, 2003-Ohio-2099, ¶9, citing App.R. 16(A)(7)6. Therefore, this court may disregard appellant's assignments of error pursuant to App.R. 12(A)(2). *Id.* at ¶11; *see also Karnofel v. Superior Waterproofing, Inc.*, 11th Dist. Trumbull No. 2018-T-0055, 2019-Ohio-1409, ¶39.

{¶71} Had it been raised below, however, we would still find the claimed error to be without merit.

{¶72} The trial court found that "while the Grays may have asserted a valid (but vague) affirmative defense, they clearly did not assert a viable claim that meets the requirements of the Ohio Rules of Civil Procedure as a properly pleaded claim for damages." We agree.

{¶73} Civ.R. 8(A), "claims for relief," states, in pertinent part, that "[a] pleading that sets forth a claim for relief, whether an original claim, counterclaim, cross-claim, or third-party claim, shall contain (1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled. If the party seeks more than twenty-five thousand dollars, the party

13

shall so state in the pleading but shall not specify in the demand for judgment the amount of recovery sought, unless the claim is based upon an instrument required to be attached pursuant to Civ. R. 10."

{¶74} In addition, Civ.R. 13(A) provides that "[a] pleading *shall* state as a counterclaim any claim which at the time of serving the pleading the pleader has against the opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim * * *." (Emphasis added.)

{¶75} There is no dispute that the Grays did not set forth a counterclaim for money damages for the alleged breach of the settlement agreement and release. This failure would appear to resolve the issue inasmuch as it has been waived and the Grays cannot now assert it on appeal. *See Poppe Law Office v. Orick*, 3d Dist. Mercer No. 10-13-07, 2013-Ohio-5662, ¶30.

{¶76} The Grays appear to be arguing that an affirmative defense of release was transformed into a counterclaim via Civ.R. 15(B), which allows for the amendment of pleadings to conform to evidence presented at trial, and rescues them from waiver when their claim for breach of the settlement agreement and release was tried by implied consent of the parties.

{¶77} Civ. R. 15(B) provides:

{¶78} "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment. Failure to amend as provided herein does not affect

14

the result of the trial of these issues.  If evidence is objected at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

{¶79} An affirmative defense, however, cannot simply be transformed into a counterclaim.  The difference between a defense and a counterclaim is that "the latter is affirmative in nature, and asserts a separate cause of action, while the former serves to preclude recovery by asserting facts that defeat the plaintiff's right to recovery."  (Citation omitted.)  *BAC Home Loans Servicing, L.P. v. Hall*, 12th Dist. Warren No. CA2009-10-135, 2010-Ohio-3472, ¶18.  An affirmative defense generally refers to that which is offered to defeat an action by "denying, justifying, or confessing and avoiding the plaintiff's cause of action.  It goes to the plaintiff's right and generally would not be considered an independent claim existing against the plaintiff."  (Citation omitted.)  *Id.*

{¶80} Civ.R. 8(C) provides that "[w]hen a party has mistakenly designated a defense as a counterclaim or a counterclaim as a defense, the court, if justice so requires, shall treat the pleading as if there had been a proper designation."  This provision, however, was intended to permit trial courts to remedy *clerical errors* made in designating affirmative defenses and counterclaims and was not intended as a means by which a party could correct a substantive error in a pleading after the time for amendment to the pleading had passed.  *BAC Home Loans Servicing* at ¶19, citing *Am. Outdoor Advertising*

15

*Co., LLC v. P & S Hotel Group, Ltd.,* 10th Dist. Franklin No. 09-AP-221, 2009-Ohio-4662, ¶26.

**{¶81}** The transcript reveals that toward the end of trial, MBFinancial and the Ritzels moved the court to amend the pleadings to conform to the evidence, which the magistrate granted without objection. Payette then indicated to the court that it would "like to make a similar motion to conform." The magistrate responded that "the motion to have it conform to the evidence has already been put on by the Defendants [MBFinancial and Ritzels], so its conforming how it conforms. Okay." Payette's counsel replied, "Okay," and the Grays' counsel said, "Prospectively as well." The magistrate responded, "All right. So that will be granted for all parties * * *."

**{¶82}** We must agree with the Ritzels that the statement, "[p]rospectively as well" was "nebulous," at best and certainly not a motion to amend. But it would appear from the magistrate's response that she was going to accept all pleadings to have been amended to conform to the evidence presented at trial.

**{¶83}** Such conformation, however, does not change the fact that the Grays did not seek affirmative relief under the release (as opposed to using the release as an affirmative defense to the Ritzels' claims against them), and there is nothing in this record on the part of the court or MBFinancial and the Ritzels that suggests an affirmative claim for damages relating to the release was tried by implied consent.

**{¶84}** In *State ex rel. Evans v. Bainbridge Twp. Trustees*, 5 Ohio St.3d 41 (1983), the Supreme Court of Ohio explained that "[a]n implied amendment of the pleadings will not be permitted, however, where it results in substantial prejudice to a party. * * * Various factors to be considered in determining whether the parties impliedly consented to litigate

16

an issue include: whether they recognized that an unpleaded issue entered the case * * *; whether the opposing party had a fair opportunity to address the tendered issue or would offer additional evidence if the case were to be retried on a different theory * * *; and whether the witnesses were subjected to extensive cross-examination on the issue * * *." (Citations omitted.) *Id.* at 45-46.

{¶85} Under Civ.R. 15(B), implied consent is not established merely because evidence bearing directly on an unpleaded issue is introduced without objection. Rather, it must appear that the parties understood the evidence was aimed at the unpleaded issue. *Id.* at 46, citing *MBI Motor Company, Inc. v. Lotus/East, Inc.*, 506 F.2d 709, 711 (6th Cir.1974).

{¶86} A review of the hearing transcript reveals that the only evidence on this issue was the mutual release agreement itself, which was submitted by stipulation of all the parties, and Mr. Gray's brief testimony, which touched upon the mutual release and that the underlying litigation was costing at least $35,000.

{¶87} Counsel for MBFinancial and the Ritzels made three objections, all of which were sustained. Further, during closing arguments, counsel for MBFinancial and the Ritzels expressed confusion over the Grays' argument, questioning whether they were talking about the real estate purchase agreement or the mutual release. The magistrate's decision is also silent as to the issue. In the magistrate's findings, the mutual release is only referenced in conjunction with the confidential settlement agreement and the fact that it "resolved the eviction litigation between them [the Ritzels and the Grays]."

{¶88} Thus, there is nothing in the record from which it can be inferred that the Ritzels or the court regarded the issue as one being tried, impliedly or explicitly. It also

appears that MBFinancial and the Ritzels would have cross-examined Mr. Gray and/or offered rebuttal evidence and witnesses on the issue, particularly, damages. Instead they simply objected to the line of questioning, which the court sustained.

{¶89} "[T]he implication of Civ.R. 15(B) is that a trial court may not base its decision upon an issue which was tried inadvertently. Whether an unpleaded issue is tried by implied consent is to be determined by the trial court, whose finding will not be disturbed, absent showing of an abuse of discretion." *Evans* at 46, citing *Chesapeake & Ohio Railway Co. v. Newman*, 243 F.2d 804 (6th Cir.1957).

{¶90} For the foregoing reasons, we find the Grays' assignment of error not well taken and affirm the judgment of the Portage County Court of Common Pleas.


CYNTHIA WESTCOTT RICE, J., concurs,

THOMAS R. WRIGHT, J., concurs in judgment only.

18